## MEADOWS v CITY OF DETROIT

Docket No. 93451. Submitted April 27, 1987, at Detroit. Decided
November 16, 1987. Leave to appeal applied for.

Henry C. Meadows (hereafter plaintiff) and his wife, Claudia L.
Meadows, brought an action in Wayne Circuit Court against
the City of Detroit, the Detroit Police Department, chief of
police William L. Hart, former chief of police Philip Tannian,
and former deputy chief of police George Bennett, seeking
damages arising out of plaintiff's discharge from employment
as a police officer, and claiming wrongful discharge, breach of
contract, intentional infliction of emotional distress, loss of
consortium, defamation, and violation of due process. Plaintiff
also sought a writ of mandamus to compel his reinstatement
with back pay. Plaintiff's discharge, based on several violations
of police department rules and regulations, was the subject of
(1) a hearing before then chief of police Tannian, (2) an appeal
of Tannian's decision to the Detroit Police Department Trial
Board, which included then deputy chief of police Hart, (3)
proceedings before an arbitration panel which remanded to the
trial board for a limited determination of whether the sanc-
tions imposed were appropriate, and (4) a reaffirmance by the
trial board that the sanctions were appropriate. The trial court,
Joseph B. Sullivan, J., granted partial accelerated judgment in
defendants' favor on plaintiff's claims arising out of the collec-
tive bargaining agreement between his union, the Detroit
Police Officers Association, and the City of Detroit, ruling that
judicial review was precluded by plaintiff's failure to exhaust
remedies available under the collective bargaining agreement
by not appealing the trial board's reaffirmance of his discharge
to the arbitration panel. Plaintiff was allowed to amend his
complaint to allege that plaintiff's union breached its duty of
fair representation by refusing to represent him at the second

REFERENCES

Am Jur 2d, States, Territories, and Dependencies §§ 99 et seq.

Am Jur 2d, Summary Judgment §§ 22-25.

State's immunity from tort liability as dependent on governmental
or proprietary nature of function. 40 ALR2d 927.

See also the annotations in the Index to Annotations under Sum-
mary Judgment.

appeal to the arbitration panel. Defendants filed a motion for summary disposition, arguing that the tort claims were barred by governmental immunity, the contract claims were barred by the statute of limitations, and the request for a writ of mandamus was barred by plaintiff's failure to exhaust administrative remedies. The trial court, Richard D. Dunn, J., granted the motion and plaintiff appealed.

The Court of Appeals *held:*

1. The chief of police of the Detroit Police Department, as the highest executive officer of that department under the provisions of the charter of the City of Detroit, is absolutely immune from all tort liability when acting within his authority. In this case, former chief of police Tannian was acting within his authority in suspending and later discharging plaintiff, and current chief of police Hart was acting within his authority in responding by letter to an individual who had lodged a complaint regarding plaintiff's discharge.

2. Members of the trial board are lower-level executive officials, who, when applying mandatory provisions of the city charter and rules and regulations of the police department, are merely performing ministerial-operational acts and, therefore, not entitled to governmental immunity. Thus, the trial court erred in ruling that the trial board members were entitled to governmental immunity. In any event, summary disposition of the tort claims against defendant Hart, in his capacity as trial board member, was proper since plaintiff failed to state a tort claim against this defendant relative to his duties on the trial board.

3. The trial court correctly ruled that the chiefs of police and the trial board members were performing governmental functions when disciplining and discharging plaintiff and that, therefore, the City of Detroit could not be vicariously liable for these employees' actions.

4. Governmental immunity is a characteristic of government which prevents imposition of tort liability and a governmental agency need not raise it as an affirmative defense in its first responsive pleading. A plaintiff who brings a tort action against a governmental agency must plead facts in avoidance of governmental immunity. However, such immunity is not a characteristic of government employees so they must raise governmental immunity as an affirmative defense in their first responsive pleadings under the current court rules. In this case, the individual defendants had not raised governmental immunity as an affirmative defense. However, since the responsive pleadings were filed at a time when the court rules in effect did not

include governmental immunity in a list of affirmative defenses that must be pled in a first responsive pleading, it would be unfair to hold that these defendants have waived governmental immunity as a defense.

5. The trial court erred in dismissing plaintiff's contract claims on the basis of governmental immunity since such immunity is not a defense to a contract claim. However, since the contract claims were not filed within the six-month period of limitations applicable to actions claiming wrongful discharge or breach of a union's duty to fairly represent a member, summary disposition of the contract claims was proper.

Affirmed.

1. Motions and Orders — Summary Disposition — Failure to State a Claim — Court Rules.

A motion for summary disposition on the ground that the opposing party has failed to state a claim upon which relief can be granted tests the legal basis of the complaint, not whether it can be factually supported; the motion is tested by the pleadings alone and may not be granted unless a claim is so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recover (MCR 2.116[C][8]).

2. Governmental Immunity — High Governmental Officials.

Judges, legislators, and the highest executive officials of all levels of government are absolutely immune from all tort liability whenever they are acting within their respective judicial, legislative, and executive authority.

3. Governmental Immunity — Lower-Level Officials, Employees and Agents.

Lower-level government officers, employees and agents are immune from tort liability only when they are: (1) acting during the course of their employment and are acting, or reasonably believe they are acting, within the scope of their authority; (2) acting in good faith; and (3) performing discretionary-decisional, as opposed to ministerial-operational, acts; discretionary-decisional acts are those which involve significant decision-making that entails personal deliberation, decision and judgment; ministerial-operational acts involve the execution or implementation of a decision and entail only minor decision-making.

4. Governmental Immunity — Lower-Level Officials, Employees and Agents.

Application of mandatory provisions of a municipal charter and the rules and regulations of a municipal police department by

the municipality's lower-level executive officials is a ministerial act not entitled to governmental immunity from tort liability.

5. GOVERNMENTAL IMMUNITY — RESPONDEAT SUPERIOR.

A governmental agency can be held vicariously liable only when its officer, employee or agent, acting during the course of employment and within the scope of authority, commits a tort while engaged in an activity which is nongovernmental or proprietary, or which falls within a statutory exception to governmental immunity from tort liability.

6. GOVERNMENTAL IMMUNITY — PLEADING.

Sovereign or governmental immunity is not an affirmative defense, but rather a characteristic of government which prevents imposition of tort liability; a plaintiff must plead affirmatively in avoidance of sovereign or governmental immunity to state a claim against a governmental entity.

7. GOVERNMENTAL IMMUNITY — PLEADING — GOVERNMENTAL EMPLOYEES.

Governmental immunity is not an inherent characteristic of individual governmental employees and thus it must be raised as an affirmative defense in an employee's responsive pleading to an action in tort (MCR 2.111[F][2], [3][a]).

8. LIMITATION OF ACTIONS — LABOR RELATIONS — LABOR UNIONS — DUTY OF FAIR REPRESENTATION.

The period of limitations applicable to an action against a labor union for a breach of its duty to fairly represent a member is six months.

*Benjamin Whitfield, Jr.,* for plaintiffs.

*Donald Pailen,* Corporation Counsel, *Abigail Elias,* Deputy Corporation Counsel, and *Thomas L. Walters* and *David J. Masson,* Assistant Corporation Counsel, for defendants.

Before: D. F. WALSH, P.J., and WAHLS and J. R. GIDDINGS,* JJ.

WAHLS, J. Henry C. Meadows (hereafter plaintiff) and his wife brought suit against defendants

* Circuit judge, sitting on the Court of Appeals by assignment.

in Wayne Circuit Court, seeking damages for injuries arising out of plaintiff's discharge from employment as a police officer, based on wrongful discharge, breach of contract, intentional infliction of emotional distress, loss of consortium, defamation, and violation of due process rights. Plaintiff also sought a writ of mandamus to compel his reinstatement with back pay. He now appeals as of right from a grant of summary disposition in favor of defendants based on governmental immunity. We affirm.

This case involves various tort and contract claims brought against the City of Detroit, its police department, and certain officials within that department by a Detroit police officer who was discharged from employment in May, 1973. The serpentine nature of the history of this case, which was filed in 1983, is as labyrinthine as it is lengthy. This is because prior to the commencement of the instant action the underlying facts in this case generated several years of adjudication, arbitration, and litigation in administrative and federal court forums. A somewhat detailed review of these underlying facts is necessary in order to place the present lawsuit in context.

Plaintiff was employed as a police officer for the City of Detroit from 1965 until May, 1973, when he was suspended without pay from the Detroit Police Department on the same day that he was indicted by a Wayne County grand jury on criminal charges arising out of a 1972 narcotics investigation. In September, 1974, a Detroit Recorder's Court jury found plaintiff not guilty of criminal wrongdoing. Nevertheless, in October, 1974, plaintiff was notified by the department that he was being charged with having violated several departmental rules and regulations. Specifically, plaintiff was suspected of having failed to report the accep-

tance of a bribe by his partner in the police department, having intentionally falsified a search warrant affidavit, and having neglected to turn over property seized from arrested persons to the proper officials without unnecessary delay. Following a hearing in October, 1974 before defendant Philip Tannian, then Chief of the Detroit Police Department, plaintiff's discharge without pay was affirmed.

Pursuant to departmental procedure and an applicable collective bargaining agreement, plaintiff appealed Chief Tannian's decision to the Detroit Police Department Trial Board, which consisted of Defendant William L. Hart, then deputy chief of police, and Inspectors Richard Dungy and Rufus Anderson.[1] See Detroit Charter, article 7, ch 11, § 7-1101 *et seq.* In May, 1975, a de novo hearing was held before the trial board to determine the validity of the charges against plaintiff. Following that hearing, the trial board found plaintiff guilty of all but two charges and thus upheld his discharge. This decision was appealed to an arbitration panel, as permitted by the applicable collective bargaining agreement, and in an opinion issued in April, 1976, all but one of the charges against plaintiff were set aside. The arbitration panel upheld the trial board's finding that plaintiff had failed to report that his partner had accepted a bribe and remanded the case to the trial board for the limited purpose of determining whether the penalty meted out to plaintiff was "unduly harsh" in light of the substantial reduction of charges sustained on appeal. The arbitration panel

[1] In the proceedings below, a default judgment apparently was requested against defendant George Bennett for failure to file an answer. Defendants suggest that Bennett was a member of the trial board which upheld plaintiff's discharge. We have been unable to verify Bennett's role in this matter; however, his liability is not directly at issue on appeal.

noted explicitly that plaintiff would be permitted to bring his case before the arbitration panel again once the trial board had evaluated the fairness of the penalty he had been given.

In December, 1976, plaintiff was notified that the trial board reaffirmed its support of the penalty rendered previously. Apparently, the composition of the trial board at that time was the same as it had been earlier, with the only change being that defendant Hart had since replaced defendant Tannian as chief of police. At this point, plaintiff's union evidently refused to continue handling plaintiff's grievance by returning to the arbitration panel. In any case, the trial board's reaffirmance of the propriety of the penalty was not taken by plaintiff back to arbitration. Instead, in October, 1978, approximately twenty-two months after the trial board issued its reaffirmance, plaintiff filed suit against defendants in the United States District Court for the Eastern District of Michigan, alleging various claims grounded on the underlying facts in this case and apparently joining his wife as a plaintiff after several amendments to his complaint. Plaintiff's federal lawsuit was dismissed by Judge Charles Joiner pursuant to defendants' motion for summary judgment, and that dismissal was affirmed on appeal by the Sixth Circuit Court of Appeals. Thereafter, plaintiff's writ for certiorari to the United States Supreme Court was denied.

On May 10, 1983, plaintiff filed the instant lawsuit in Wayne Circuit Court. Defendants moved for accelerated judgment under GCR 1963, 116, now MCR 2.116, on several bases. In an opinion dated May 15, 1984, then Circuit Judge Joseph B. Sullivan granted accelerated judgment on those of plaintiff's claims arising out of the collective bargaining agreement, including challenges to the

procedures employed in processing plaintiff's discharge, on the ground that plaintiff's failure to exhaust his contractual remedies (i.e., his failure to appeal to the arbitration panel a second time) precluded judicial review. Judge Sullivan took notice of plaintiff's claim that the union had refused to take plaintiff's case back to arbitration, noting, however, that plaintiff's collective-bargaining claims were still precluded until plaintiff alleged and proved that the union had breached its duty of fair representation in handling plaintiff's grievance. Judge Sullivan observed that nothing prevented plaintiff from amending his complaint to add such a claim. Moreover, Judge Sullivan found that plaintiff's suit was not barred by the three-year statute of limitations, which all parties agreed was applicable in the case, because the limitations period was tolled during the contractual grievance procedures and the federal court litigation. After a rehearing was denied, plaintiff was successful in obtaining permission to amend his complaint to add an allegation that the union's refusal to pursue a second appeal to the arbitration panel was wrongful and amounted to a breach of its duty of fair representation.

In response to plaintiff's amended complaint, defendants filed a motion for summary disposition pursuant to MCR 2.116(C)(8)—failure to state a claim on which relief can be granted—arguing that plaintiff's tort claims were barred by governmental immunity, his contract claims were barred by the statute of limitations, and his request for a writ of mandamus was barred by a failure to exhaust his administrative remedies. A hearing was conducted on April 23, 1986, before Judge Richard D. Dunn, resulting in an amended order dated June 6, 1986, granting summary disposition to defendants based on governmental immunity. It

is from this order which plaintiff now appeals as of right, arguing that the trial court erred in ruling that his tort claims were barred by governmental immunity and in dismissing his claims based on contract.

A motion for summary disposition brought under MCR 2.116(C)(8) tests the legal basis of the complaint, not whether factual support exists. The motion is to be judged by reliance on the pleadings alone and may not be granted unless a claim is so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recover. *Brown v Northville Regional Psychiatric Hospital,* 153 Mich App 300, 303; 395 NW2d 18 (1986).

First, plaintiff argues that the trial court erred in determining that defendants in this case are entitled to governmental immunity. MCL 691.1401 *et seq.*; MSA 3.996(101) *et seq.* Pursuant to the rules enunciated by the Supreme Court in *Ross v Consumers Power Co (On Rehearing),* 420 Mich 567, 591-592; 363 NW2d 641 (1984), we will determine the applicability of governmental immunity in this case first regarding the individual defendants and then regarding the municipal defendant. Regarding the individual defendants, *Ross* differentiates between officials at the highest levels of government and lower-level officials. The test applicable to the former was set forth as follows:

> Judges, legislators, and the highest executive officials of all levels of government are absolutely immune from all tort liability whenever they are acting within their respective judicial, legislative, and executive authority. [420 Mich 592.]

In this case, defendants Tannian and Hart, at different times, functioned as the chief of police.

Tannian was acting as the highest executive officer of the Detroit Police Department when he discharged plaintiff. The city charter, article 7, ch 11, § 7-1106, describes the chief of police as the chief executive officer of the police department and gives the chief the authority to suspend and discharge employees of the department. Since Tannian was thus acting within his executive authority upon discharging plaintiff without pay, he was absolutely immune from tort liability for his action. That he may have erred in discharging plaintiff "without pay," absent action by the board of police commissioners, does not change this result.

For these same reasons, defendant Hart was also absolutely immune from tort liability for his participation in the trial board after remand from the arbitration panel, since by that time he had assumed the position of chief of police. In addition, Hart is entitled to the cloak of governmental immunity due to his high executive position for the allegedly defamatory comments he made in a July 24, 1984, letter. In that letter, addressed to Alger T. Scott, president of the Democratic Organization in the First Congressional District, Hart stated that not only was plaintiff in violation of departmental regulations by failing to report that his partner had accepted a bribe, but that his actions amounted to "criminal misconduct." This letter was apparently written in response to a citizen complaint concerning plaintiff's discharge. Sections 7-1108 and 7-1109 in article 7, chapter 11 of the Detroit Charter describe some of the duties of the chief of police regarding citizen complaints:

> Sec. 7-1108. Complaints.
> Complaints concerning the police department filed anywhere in the department shall be forwarded immediately to the board secretary. Copies

of the complaint shall be made available to each member of the board, the chief investigator, and the chief of police. The chief shall investigate a complaint immediately and file a report of findings with the board within 45 days. However, the board may, in its discretion, at any time order an investigation by its own investigative staff instead of, or subsequent to, that of the chief.

The board secretary shall keep a public docket of complaints and the disposition of each complaint after investigation.

Sec. 7-1109. Resolution of complaints.

If a complaint is not resolved as a result of investigation to the satisfaction of the complainant, the respondent employee, or a member of the board of police commissioners, either the complainant, the respondent employee, or the board member may request the board to hear or review the matter. The board may, at its option, when it determines that a hearing or review is warranted by the evidence, hear or review the matter itself or refer the matter to a fact finder.

We thus conclude that, as a part of his duties as chief of police, Hart was implicitly authorized to respond to and, if possible, to resolve complaints concerning the police department, even complaints regarding the discharge of a police officer.

The applicability of governmental immunity to those defendants who participated on the trial board, including defendant Hart prior to his elevation to the status of chief of police, is also questioned by plaintiff on appeal. The test applicable to lower-level officers was set forth by the Supreme Court in *Ross:*

Lower level officers, employees, and agents are immune from tort liability only when they are

a) acting during the course of their employment and are acting, or reasonably believe they are acting, within the scope of their authority;

b) acting in good faith; and

c) performing discretionary-decisional, as opposed to ministerial-operational, acts.

"Discretionary-decisional" acts are those which involve significant decision-making that entails personal deliberation, decision, and judgment. "Ministerial-operational" acts involve the execution or implementation of a decision and entail only minor decision-making. [420 Mich 592.]

Plaintiff argues that Hart and the other department officials participating in the trial board's decision were lower-level officials performing only ministerial acts and were therefore not shielded by governmental immunity for torts arising out of their failure to follow the mandatory provisions of the city charter and the police department rules and regulations (e.g., failure to comply with public meeting provision, improper denial of plaintiff's pay absent approval by at least four members of the board of police commissioners, etc.). Defendants, on the other hand, argue that the members of the trial board are entitled to absolute immunity because they function in a judicial or quasi-judicial capacity.

In support of their position, defendants rely on *Wall v Trumbull,* 16 Mich 228 (1867). We do not believe, however, that this case established the trial board's entitlement to absolute immunity. More than one hundred years ago, the *Wall* Court held that members of a township board of supervisors were immune from tort liability for their imposition of an illegal tax because the board was performing a "judicial" duty. In *Wall,* however, the Court was merely using the term "judicial" as a synonym for "discretionary"—or, to express ourselves in the negative, as an antonym for "ministerial." Thus, Justice COOLEY stated:

In determining whether the members of the township board voting for the allowance are liable, the first question which arises is, whether the nature of their duties is judicial, or ministerial only; for the rule of liability is altogether different in the two cases. A ministerial officer has a line of conduct marked out for him, and has nothing to do but to follow it; and he must be held liable for any failure to do so which results in the injury of another. A judicial officer, on the other hand, has certain powers confided to him to be exercised according to his judgment or discretion; and the law would be oppressive which should compel him in every case to decide correctly at his peril. [16 Mich 234.]

This reading of *Wall* is borne out by the Supreme Court's use of the case in *Ross* to help explain the distinction between discretionary and ministerial acts. *Ross, supra,* p 626.

Viewing, therefore, the trial board members as lower-level executive officials, we conclude that they are not entitled to governmental immunity from tort liability under the *Ross* rule. Application of the *mandatory* provisions of the Detroit Charter and the rules and regulations of the Detroit Police Department is a ministerial act not entitled to governmental immunity. *Young v Ann Arbor (On Remand),* 147 Mich App 333; 382 NW2d 785 (1985), lv den 425 Mich 862 (1986); *Brown, supra.* Lower-level government officials who cause tortious injuries by their failure to follow established administrative procedures are not shielded by governmental immunity. *Young, supra; Brown, supra; Bandfield v Wood,* 421 Mich 774; 364 NW2d 280 (1985).

Nevertheless, we affirm the trial court's result concerning these officials because, after reviewing plaintiff's claims against them, we find that plaintiff has failed to state a *tort* claim against the trial board members. The members' failure to follow

established procedures may have constituted a prima facie case for breach of contract under the collective bargaining agreement or violation of due process, but it does not establish tortious conduct on the part of the relevant defendants. Accordingly, we affirm on this issue because the trial court reached the right result, albeit for the wrong reason. *Warren v Howlett,* 148 Mich App 417, 426; 383 NW2d 636 (1986).

Next, we consider whether the trial court erred in dismissing plaintiff's claims against the defendant city. Plaintiff argues that the city is vicariously liable for the torts of its employees in the Detroit Police Department. The vicarious liability of a municipality for the torts of its employees is based on the doctrine of respondeat superior. Such liability generally can be imposed only where the individual tortfeasor acted during the course of his or her employment and within the scope of his or her authority. *Ross, supra,* p 624. Moreover, a governmental agency can be held vicariously liable "only when its officer, employee, or agent, acting during the course of employment and within the scope of authority, commits a tort while engaged in an activity which is nongovernmental or proprietary, or which falls within a statutory exception." *Id.,* p 625.

In this case, the trial court correctly concluded that the City of Detroit was not vicariously liable for the alleged torts of its employees. It is undisputed that the maintenance of a police force is a governmental function. *Ross, supra,* p 661. It is equally clear that the Detroit Charter vested the chief of police and members of the trial board with the authority to discipline, suspend, and discharge police officers for misconduct. Detroit Charter, article 7, ch 11 §§ 7-1106(4), 7-1107(3). Contrary to plaintiff's contention, logically implicit in this au-

thority is the power to conduct departmental investigations to determine whether the suspension or discharge of a police officer was warranted. Failing to find investigative authority implicit in this provision would merely invite arbitrary discharges without proper investigation. As a result, since the chief of police and trial board members were authorized to conduct disciplinary proceedings, and impliedly authorized to conduct investigations logically incident to such proceedings, they were performing governmental functions and the city cannot be held vicariously liable for their actions. To the extent that those actions were ultra vires (e.g., actions deliberately performed contrary to the mandatory procedures set forth in the city charter), the city also cannot be held vicariously liable. *Ross, supra,* pp 624-625.

Plaintiff also mentions that the defense of governmental immunity is an affirmative defense and must therefore be raised in the first responsive pleading or motion. MCR 2.111(F)(2), (3). Since defendants failed to assert this defense by way of either of these two methods, plaintiff contends that they have waived their right to assert it. MCR 2.111(F)(2). We decline to agree with plaintiff for several reasons. First, sovereign or governmental immunity is not an affirmative defense, but rather a characteristic of government which prevents imposition of tort liability. *Ross, supra,* p 621, n 34. Thus, Michigan courts have held that plaintiffs must plead affirmatively in avoidance of sovereign or governmental immunity to state a claim against governmental entities. *Hoffman v Genesee Co,* 157 Mich App 1; 403 NW2d 485 (1987). Second, although immunity is not an inherent characteristic of individual government employees and therefore must be raised as an affirmative defense in responsive pleadings under the new court rules, MCR

2.111(F)(2), (3)(a), the court rules in effect at the time defendants in this case were required to file their first responsive pleading, filed in October and November of 1983, did not list "immunity granted by law" as an affirmative defense, GCR 1963, 111.7. This phrase was added to the list of affirmative defenses only in a January, 1985, amendment to the new rule, MCR 2.111(F)(3)(a). It would be unjust to punish defendants for their failure to assert governmental immunity prior to the time that "immunity granted by law" was listed as an affirmative defense in the applicable court rule. MCR 1.102.

Finally, plaintiff argues that the trial court erred in dismissing plaintiff's contract claims. We note that the trial court rather peremptorily granted the motion for summary disposition in favor of defendants "on the basis of *Ross v Consumers Power.*" To the extent that the court's decision to dismiss plaintiff's contract claims was based on governmental immunity, that decision is clearly erroneous. As plaintiff correctly points out on appeal, governmental immunity is not a defense to a contract claim. *Ross, supra,* p 647. However, even though the lower court apparently employed erroneous reasoning in dismissing plaintiff's contract claims, we find that the proper result was achieved, and thus we affirm. *Warren, supra.*

Plaintiff alleged certain contractual claims, including wrongful discharge, regarding his termination from employment as a police officer based on provisions in the Detroit Charter and the collective bargaining agreement between the city and plaintiff's union. Plaintiff complied with an earlier suggestion by the circuit court and amended his complaint to include the allegation that the Detroit Police Officers Association, plaintiff's union,

breached its duty of fair representation by failing to represent him a second time before an arbitration panel after the trial board reaffirmed its support of the penalty earlier imposed. The suggestion for plaintiff to amend his complaint to include this allegation was apparently intended to permit plaintiff to attempt to avoid a dismissal for failure to exhaust his contractual remedies. *Vaca v Sipes,* 386 US 171; 87 S Ct 903; 17 L Ed 2d 842 (1967). It was also apparently premised on a belief that a three-year period of limitations applied in plaintiff's case. Although we agree that plaintiff was obligated to allege the union's breach of its duty of fair representation to avoid a dismissal based on a failure to exhaust contractual remedies available under the collective bargaining agreement, we disagree that the applicable period of limitations in this case is three years. The proper period of limitations is six months.

When a duty of fair representation claim is asserted by itself or in combination with a claim of wrongful discharge, this Court has held that a six-month period of limitations applies. *Romero v Paragon Steel Div, Portec, Inc (On Remand),* 129 Mich App 566, 572-573; 341 NW2d 546 (1983), lv den 419 Mich 861 (1984); *Ray v Organization of School Administrators & Supervisors, Local 28, AFL-CIO,* 141 Mich App 708; 367 NW2d 438 (1985); *Ogletree v Local 79, SEIU, AFL-CIO,* 141 Mich App 738, 745; 368 NW2d 882 (1985), lv den 423 Mich 854 (1985). The adoption of such a brief limitations period is based on the following sound policy rationale:

> Where the parties have contracted to settle claims among themselves, their final decisions should not be exposed to collateral attack for long periods but should become final rather quickly.

See *UMW v Barnes & Tucker Co*, 561 F2d 1093, 1096 (CA 3, 1977) ("It is not arbitration per se that federal policy favors, but rather final adjustment of differences by a means selected by the parties.") Otherwise, the internal system will be just another step in a lengthy process of litigation rather than an efficient and unitary method of disposing of the high volume of grievances generated under any large scale employment contract. [*Romero, supra,* p 569, quoting *Badon v General Motors Corp*, 679 F2d 93 (CA 6, 1982). See also *DelCostello v Int'l Brotherhood of Teamsters*, 462 US 151; 103 S Ct 2281; 76 L Ed 2d 476 (1983).

In this case, plaintiff was notified of the trial board's second decision, which was not appealed to an arbitration panel, in December, 1976. The instant lawsuit was filed in May, 1983. Even if the period of limitations was tolled during the pendency of the federal litigation in this matter, the date that plaintiff filed suit in federal court—October, 1978—still falls well outside the applicable six-month period. Accordingly, the result of the trial court's dismissal of plaintiff's claims based in contract was proper.

In conclusion, we find appropriate the lower court's grant of summary disposition in favor of defendants based on plaintiff's failure to state a claim on which relief can be granted. For the reasons stated above, including governmental immunity available to defendant chief of police; an absence of vicarious liability against defendant municipality; failure to state a claim in tort against defendant trial board members; and failure to file this action, which includes an allegation of breach of a union's duty to fairly represent plaintiff, within the applicable six-month period of limitations, we affirm the trial court.

Affirmed.