PETIPREN v JASKOWSKI

JASKOWSKI v PETIPREN

Docket Nos. 298088 and 301125. Submitted July 6, 2011, at Detroit. Decided October 20, 2011, at 9:15 a.m. Leave to appeal granted, 491 Mich 913.

> Thomas J. Petipren brought an action in the Sanilac Circuit Court against Rodney Jaskowski, who was the police chief for the village of Port Sanilac, and the village of Port Sanilac, alleging that Jaskowski had assaulted and wrongfully arrested him for resisting and obstructing and disorderly conduct (Docket No. 298088). Jaskowski filed a separate suit against Petipren, alleging assault and negligent and intentional infliction of emotional distress, and Petipren filed a counterclaim in the separate lawsuit, alleging claims of negligence, negligent infliction of emotional distress and intentional infliction of emotional distress against Jaskowski (Docket No. 301125). Petipren's band had been scheduled to perform at a fundraiser hosted by the village of Port Sanilac. Attendees complained about the style of music performed before Petipren's arrival and performance. Jaskowski was called to the event, which was cancelled at some point. Jaskowski arrested Petipren while he was warming up on his drum set, but the parties' respective versions of the circumstances surrounding the arrest were completely different. Petipren alleged that he did not resist arrest, but Jaskowski barged through the drum set and pushed him several times. Jaskowski alleged that Petipren refused to stop playing, swore at him, struck him in the jaw, and repeatedly resisted the arrest. Jaskowski filed motions for summary disposition pursuant to MCR 2.116(C)(7) in both cases on the basis that under MCL 691.1407(5), Petipren's claims were barred by governmental immunity. The court, Donald A. Teeple, J., denied Jaskowski's motions. Jaskowski appealed both orders, and this Court consolidated the appeals.

> The Court of Appeals *held*:

> Under MCL 691.1407(5), judges, legislators, and the elective or highest appointive executive officials of all levels of government are immune from tort liability for injuries to persons or damage to property if they are acting within the scope of their judicial, legislative, or executive authority. While a police chief is recognized as the highest appointive official in the police department, he or she would

not be immune from tort liability unless the challenged acts fell within the scope of his or her executive authority. Whether the highest executive official of a local government was acting within his or her authority depends on (1) the nature of the acts, (2) the position held by the official, (3) the local law defining the official's authority, and (4) the structure and allocation of powers at that particular level of government. The official's motive is irrelevant. The trial court properly denied Jaskowski's motions for summary disposition. Jaskowski's duties as chief of police generally involved policy, procedure, administration, and personnel matters and were distinct from the nature of the duties of an ordinary police officer. Jaskowski was not acting within the scope of his executive duties when he performed the ordinary police act of arresting Petipren and was thus not entitled to absolute immunity. The fact that Jaskowski occasionally performed the duties of an ordinary police officer did not place those functions within the scope of the executive duty of the police chief; rather, they remained within the scope of the functional responsibilities of the police department generally.

Affirmed.

MURRAY, P.J., dissenting, would have reversed and remanded for entry of an order granting Jaskowski's summary disposition motions on the basis that as the chief of police, Jaskowski was the highest executive official of a level of government and had acted within the scope of his employment when arresting Petipren. Jaskowski averred in his affidavit that arresting offenders was one of the functional responsibilities of his position as chief of police and Petipren failed submit any evidence to dispute this fact. On these facts, Judge MURRAY would have held that Jaskowski was entitled to absolute immunity under MCL 691.1407(5).

1. GOVERNMENTAL IMMUNITY — EXECUTIVE OFFICIALS — CHIEFS OF POLICE.

Judges, legislators, and the elective or highest appointive executive officials of all levels of government are immune from tort liability for injuries to persons or damage to property if they are acting within the scope of their judicial, legislative, or executive authority; a chief of police is generally recognized as the highest appointive official in a police department; if the duties of an ordinary police officer—such as effecting arrests—are outside the scope of the police chief's executive authority, a police chief acting as an ordinary police officer is not entitled to absolute immunity simply because he or she is also the police chief, even if he or she occasionally performs those ordinary duties, but would be entitled to the immunity provided to governmental employees if all the

statutory requirements for that immunity are satisfied (MCL
691.1407[2], [5].)

2. GOVERNMENTAL IMMUNITY — EXECUTIVE OFFICIALS — EXECUTIVE AUTHORITY.

Whether an elective or highest executive official of a level of local
government was acting within his or her authority and therefore
immune from tort liability depends on (1) the nature of the acts, (2)
the position held by the official, (3) the local law defining his or her
authority, and (4) the structure and allocation of powers at that
particular level of government; the official's motive is irrelevant.

*Cutler & Associates, P.C.* (by *Michael H. Cutler*), for
Thomas J. Petipren.

*McGraw Morris, P.C.* (by *G. Gus Morris* and *D.
Randall Gilmer*), and *Stephens & Moore* (by *Phoebe J.
Moore*) for Rodney Jaskowski.

Before: MURRAY, P.J., and FITZGERALD and RONAYNE
KRAUSE, JJ.

FITZGERALD, J. In Docket No. 298088, plaintiff, Tho-
mas Petipren, alleged that defendant Rodney Jas-
kowski, the police chief for the village of Port Sanilac,
assaulted him without provocation and wrongfully ar-
rested him for resisting and obstructing and disorderly
conduct. In Docket No. 301125, Petipren filed a coun-
terclaim in a separate lawsuit brought by Jaskowski,
alleging that Jaskowski negligently and intentionally
inflicted emotional distress upon Petipren and acted
negligently. Jaskowski appeals as of right the orders
denying his motions for summary disposition that were
brought pursuant to MCR 2.116(C)(7) on the basis of
governmental immunity. We affirm.

I. FACTS AND PROCEDURAL HISTORY

On July 19, 2008, the village of Port Sanilac hosted a
fundraising event in a park that included a number of

musical acts and a beer tent; Petipren and his band were scheduled to perform at the event. Complaints regarding the style of music being played at the event had been voiced to volunteers working at the beer tent before Petipren's band played. Words were exchanged between individuals listening to the prior band and those patronizing the beer tent. Brown City Police Chief Ron Smith reported to the park after receiving a "call from individuals" requesting that he stop by the park "because the band that was performing was playing offensive music." The organizer of the event also returned to the event after being contacted by a volunteer at the beer tent. Upon his arrival, Smith was approached by several citizens who found the music "offensive, disturbing, and not appropriate for the crowd." Smith then contacted Village of Port Sanilac Police Chief Ronald Jaskowski and requested that Jaskowski come to the park because trouble appeared to be brewing between those who wanted the band to play and those who did not. By the time Jaskowski arrived, the organizer of the event was resolving the situation. At some point, a decision was made that the bands would no longer play.

From here, the parties' portrayals of the facts sharply diverge. Petipren testified that he had been busy assembling his drum set on stage and did not know that the concert had been canceled. Petipren was in the midst of playing his usual warmup routine when he observed Jaskowski for the first time. Jaskowski appeared to be very angry, so Petipren stopped playing to determine what Jaskowski wanted. Petipren asserted that he held his drumsticks in his lap and did not say anything. According to Petipren, Jaskowski barged through Petipren's drum set, knocked over a cymbal, grabbed Petipren's drumsticks, and flung them away. Jaskowski then grabbed Petipren by the collar and pushed him backward off of his seat and into a pole.

Petipren testified that no words were exchanged and that he put his arms straight up in the air to be completely clear that he was not resisting. Petipren stated that he began asking, "What did I do?" and Jaskowski then pushed him off the stage and shoved him down onto the grass. Jaskowski yelled at Petipren to stop resisting, and Petipren again responded that he was not resisting. When a bass player from another band asked Jaskowski why Petipren was being arrested, Jaskowski had him arrested as well. The prosecutor declined to press any charges against Petipren.

Testimony from the organizer of the event and the statements of other witnesses generally corroborated Petipren's account of the incident. Jaskowski, on the other hand, reported that when he told Petipren to stop playing, Petipren refused, swore at him, and punched him in the jaw when he tried to take Petipren's drumsticks. Jaskowski stated that Petipren continued to resist while Jaskowski attempted to handcuff him.

Petipren filed suit against Jaskowski individually and as the police chief for assault and battery and false arrest.[1] Jaskowski filed his own suit against Petipren, alleging assault, intentional infliction of emotional distress, negligence, and negligent infliction of emotional distress. Petipren filed a countercomplaint in that case alleging intentional and negligent infliction of emotional distress and negligence against Jaskowski. Jaskowski moved for summary disposition of the claims against him in each case. The trial court denied both motions.

### II. STANDARD OF REVIEW

We review de novo a trial court's determination regarding a motion for summary disposition. *Odom v*

---

[1] Petipren also filed suit against the village of Port Sanilac. The trial court dismissed the claims against the village.

*Wayne Co*, 482 Mich 459, 466; 760 NW2d 217 (2008). A trial court properly grants summary disposition under MCR 2.116(C)(7) when a claim is barred because of immunity granted by law. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). "When reviewing a motion under MCR 2.116(C)(7), this Court must accept all well-pleaded factual allegations as true and construe them in favor of the plaintiff, unless other evidence contradicts them." *Dextrom v Wexford Co*, 287 Mich App 406, 428; 789 NW2d 211 (2010). If any documentary evidence is submitted, we must view it in the light most favorable to the nonmoving party to determine whether there is a genuine issue of material fact. *Zwiers v Growney*, 286 Mich App 38, 42; 778 NW2d 81 (2009). "If no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of the facts, the question whether the claim is barred is an issue of law for the court." *Dextrom*, 287 Mich App at 431. Conversely, if a factual dispute exists regarding whether immunity applies, summary disposition is not appropriate. *Id.*

### III. STATUTORY INTERPRETATION

This appeal involves, in part, an issue of statutory construction. The primary goal of statutory interpretation is to "ascertain the legislative intent that may reasonably be inferred from the statutory language itself." *Griffith v State Farm Mut Auto Ins Co*, 472 Mich 521, 526; 697 NW2d 895 (2005), citing *Sotelo v Grant Twp*, 470 Mich 95, 100; 680 NW2d 381 (2004). "The first step in that determination is to review the language of the statute itself." *In re MCI Telecom Complaint*, 460 Mich 396, 411; 596 NW2d 164 (1999), citing *House Speaker v State Admin Bd*, 441 Mich 547, 567; 495 NW2d 539 (1993). Unless statutorily defined, every

word or phrase of a statute should be accorded its plain and ordinary meaning, MCL 8.3a; *Robertson v Daimler-Chrysler Corp*, 465 Mich 732, 748; 641 NW2d 567 (2002), taking into account the context in which the words are used, *2000 Baum Family Trust v Babel*, 488 Mich 136, 175; 793 NW2d 633 (2010). We may consult dictionary definitions to give words their common and ordinary meaning. *Halloran v Bhan*, 470 Mich 572, 578; 683 NW2d 129 (2004). When given their common and ordinary meaning, *Veenstra v Washtenaw Country Club*, 466 Mich 155, 160; 645 NW2d 643 (2002), citing MCL 8.3a, "[t]he words of a statute provide 'the most reliable evidence of its intent,' " *Sun Valley Foods Co v Ward*, 460 Mich 230, 236; 596 NW2d 119 (1999), quoting *United States v Turkette*, 452 US 576, 593; 101 S Ct 2524; 69 L Ed 2d 246 (1981).

## IV. GOVERNMENTAL IMMUNITY

The governmental tort liability act (GTLA), MCL 691.1401 *et seq.*, shields a governmental agency from tort liability "if the governmental agency is engaged in the exercise or discharge of a governmental function." MCL 691.1407(1). "The existence and scope of governmental immunity was solely a creation of the courts until the Legislature enacted the GTLA in 1964, which codified several exceptions to governmental immunity that permit a plaintiff to pursue a claim against a governmental agency." *Duffy v Dep't of Natural Resources*, 490 Mich 198, 204; 805 NW2d 399 (2011). The statutory exceptions must be narrowly construed. *Maskery v Univ of Mich Bd of Regents*, 468 Mich 609, 614; 664 NW2d 165 (2003). A plaintiff bringing suit against the government must plead in avoidance of governmental immunity. *Odom*, 482 Mich at 478-479. However, the immunity of an individual governmental

employee is an affirmative defense that the employee must raise and prove. *Id.* at 479.

## V. MCL 691.1407(5)

Jaskowski argues that he is absolutely immune from plaintiff's claims because he holds the highest appointive office at the pertinent level of government and his actions were taken within the scope of his authority. Governmental immunity from tort liability is governed by MCL 691.1407. Of particular relevance in this case, MCL 691.1407(5) provides:

> A judge, legislator, and the elective or highest appointive executive official of all levels of government are immune from tort liability for injuries to persons or damages to property if he or she is acting within the scope of his or her judicial, legislative, or executive authority.

A police chief is generally recognized as the highest appointive official in the police department. See *Payton v Detroit*, 211 Mich App 375, 394; 536 NW2d 233 (1995). However, under MCL 691.1407(5), the highest appointive executive officials of a level of government are not immune from tort liability unless their acts fall within the scope of their executive authority. *American Transmissions, Inc v Attorney General*, 454 Mich 135, 144; 560 NW2d 50 (1997); *Marrocco v Randlett*, 431 Mich 700, 710-711; 433 NW2d 68 (1988). Whether the highest executive official of a local government was acting within his or her authority depends on a number of factors, including the nature of the acts, the position held by the official, the local law defining the authority, and the structure and allocation of powers at that particular level of government. *American Transmissions*, 454 Mich at 141; *Bennett v Detroit Police Chief*, 274 Mich App 307, 312; 732 NW2d 164 (2006). The

official's motive is irrelevant.[2] *American Transmissions*, 454 Mich at 143-144; *Brown v Detroit Mayor*, 271 Mich App 692, 722; 723 NW2d 464 (2006), aff'd in part and vacated in part on other grounds 478 Mich 589 (2007).

The Port Sanilac Village Council set forth the "Essential Duties and Responsibilities" of the police chief in the job description for the position:

• Recruit, train, and monitor officers['] performance.

• Coordinates activities by scheduling work assignments, setting priorities, and directing the work of subordinate employees.

• Plan, develop, and monitor work schedules to ensure efficient use of personnel.

---

[2] In *American Transmissions*, 454 Mich at 140 n 5, the Supreme Court quoted from this Court's opinion in *American Transmissions, Inc v Attorney General*, 216 Mich App 119, 125 n 3; 548 NW2d 665 (1996):

"When the Legislature was considering amendments of the governmental immunity statute in 1985 and 1986, it always provided for immunity for judges, legislators, elective officials, and the highest appointive executive officials when they are acting within the scope of their judicial, legislative, or executive authority. See House Legislative Analysis, HB 5163 Substitute H-2, November 19, 1985; Senate Analysis, HB 5163 (S-3), March 20, 1986; House Legislative Analysis, HB 5163, July 23, 1986. This is in direct contrast to the treatment of lower level governmental employees. With respect to lower level governmental employees, the Legislature considered various intent-based standards, such as 'acting in good faith' and 'not acting in bad faith.' See House Legislative Analysis, HB 5163 Substitute H-2, November 19, 1985; House Legislative Analysis, HB 5163, January 16, 1986. The proposed intent requirements were in addition to other prerequisites to immunity in lower level employees; the employee's 'reasonable belief' that he was acting within the scope of his authority and the 'gross negligence' standard. *Id.* Ultimately, however, the specific intent requirement for lower level governmental employees was omitted from the bill as passed. See MCL 691.1407(2); MSA 3.996(107)(2). Thus, although the Legislature considered various intent-based factors for lower level governmental employees, such an intent factor was never considered or included with respect to high level governmental employees."

• Makes decisions and takes necessary actions. Identifies and solves administrative problems.

• Communicates effectively with others.

• Identify staff development and training needs and ensures that training is obtained.

• Oversees communication and public relations practices, and directs the dissemination of requested information and/or materials to requestors.

• Maintains records, prepares reports, and composes correspondence relative to the work to include but not limited to; [Michigan Incident Crime Reporting] state report, death and custody reports, officers killed report, [1982 PA 302 criminal justice training] fund expenditures report.

• Prepares and presents a monthly report to council at regular council meetings and attends monthly finance committee meeting.

• Reviews request for service, determines feasibility of requests according to resource capabilities; then proceeds to either execute the request or suggest other means to secure the requested service.

• Provides input into the development of long-range budget and planning information.

• Issues various licenses and permits handled by the police department (ie., Liquor licenses)[.]

• Prepares time sheets and presents to bookkeeper in a timely manner in accordance with pay dates for all officers.

• Maintains and updates policies and procedures within the police department.

• Maintains complete inventory and requisitions of materials and supplies.

• Vehicle fleet maintenance.

• Maintains records of all vehicles to establish repair/replacement.

• Maintains inventory of department of vehicles.

• Provide leadership and mentoring to subordinate employees while carrying out police activities.

• Record and secure all evidence.[3]

A review of the duties assigned to the chief of police reveals that the chief's duties generally involve policy, procedure, administration, and personnel matters. Generally, opinions interpreting MCL 691.1407(5) have involved either defamation lawsuits that arose from public comments made by the highest executive official of a level of government or lawsuits that arose from personnel or employment decisions made by the highest executive official of a level of government. Those cases have concluded that acts such as commenting on an official governmental matter and making personnel or employment decisions clearly fall within the scope of the executive authority of the highest executive officials of local government. For example, in *Bennett*, a suspended police officer brought an action for wrongful discharge against the chief of police and the mayor. This Court concluded that the chief had express legal authority to suspend police officers from duty and, therefore, was entitled to governmental immunity for suspending the police officer for operating an Internet website in violation of police department rules and regulations. *Bennett*, 274 Mich App at 313-315. This Court also concluded that the mayor, who had authority to terminate or suspend employees, was immune from the plaintiff's tort allegations. *Id.* at 319.

In *Washington v Starke*, 173 Mich App 230; 433 NW2d 834 (1988), the personal representative of a fleeing burglar shot by a Benton Harbor police officer brought a wrongful death action against the city's public safety director, who is the highest executive

---

[3] The specific job duties of the police chief do not refer to making arrests.

official in Benton Harbor's police department. The plaintiff alleged that the public safety director had failed to properly supervise the officer who used deadly force in shooting the burglar. This Court concluded that the public safety director's "supervision of departmental employees is conduct within his executive authority, and therefore immune from suit." *Id.* at 241.

In *Meadows v Detroit*, 164 Mich App 418; 418 NW2d 100 (1987), a police officer brought suit against the police chief[4] for the chief's participation in a board hearing that resulted in the suspension of the police officer and for allegedly defamatory comments the chief wrote in a letter to the effect that the officer's failure to report that his partner had accepted a bribe amounted to "criminal misconduct." This Court noted that the city charter gave the police chief the authority to suspend and discharge employees of the department. Thus, the Court concluded that the chief was acting within the scope of his executive authority when he discharged the plaintiff without pay and was therefore absolutely immune for his action. *Id.* at 427. The Court also concluded that the police chief was entitled to absolute immunity for the allegedly defamatory comments he made in the letter written in response to a citizen complaint concerning the officer's discharge. The Court found that "as a part of his duties as chief of police, [the chief] was implicitly authorized [by the city charter] to respond to and, if possible, to resolve complaints concerning the police department, even complaints regarding the discharge of a police officer." *Id.* at 428.

---

[4] We note that in Meadows two different defendants functioned as chief police during the relevant time period. Although one defendant was responsible for the police officer's suspension and another for the allegedly defamatory remarks, it was irrelevant with respect to the governmental immunity analysis as both were acting as chief of police during the complained about actions.

None of the published decisions in this state have considered a situation involving conduct by a police chief that occurred when the chief was acting as an ordinary police officer rather than within his or her capacity as the highest executive official of a level of government. Jaskowski relies on an unpublished and thus nonbinding decision in which a panel of this Court concluded "that a police chief's 'executive authority' includes his duties as a high ranking executive as well as his ordinary duties as a police officer." *Lewkowicz v Poe*, unpublished opinion per curiam of the Court of Appeals, issued May 15, 2001 (Docket No. 216307), p 2. After specifically noting that the police chief was directed to attend a city council meeting *in his official capacity as police chief*, this Court found that the police chief "acted within the authority granted him by law as a police officer when he arrested and detained plaintiff, and was entitled to absolute immunity under MCL 691.1407(5) . . . by virtue of his status as the highest law enforcement official for the city of Romulus." *Id.* at 2-3 (emphasis added). However, in *Scozzari v City of Clare*, 723 F Supp 2d 945, 967 (ED Mich, 2010), the federal district court concluded that a police chief was not entitled to absolute immunity under MCL 691.1407(5) from an assault-and-battery claim brought by the estate of a deceased victim of a police shooting because the chief "appears to have been acting in his capacity as an officer on patrol, rather than performing any tasks particular to his position as the 'highest appointive official.' "

We find that the *Scozzari* reasoning best reflects the legislative intent expressed in the words of MCL 691.1407(5). *Scozzari* was more faithful in construing the plain language of the statute and recognized that it refers to immunity for acts taken by the highest executive official of a level of government when the official is

acting within the scope of his or her *executive* authority. When a police chief acts as an ordinary police officer— that is, when the nature of the act is outside the scope of his or her executive duties—the chief is not entitled to absolute immunity simply because he or she is also the police chief. Indeed, the essential duties of the police chief as set forth in the job description for the police chief of the village of Port Sanilac are administrative in nature and are clearly distinct from the nature of the duties of an ordinary police officer.[5] Although a police chief may occasionally perform the duties of an ordinary police officer, the police chief is not acting within the scope of his or her *executive* authority as the highest executive official in the police department when doing so.[6] Rather, the nature of the act is that of an ordinary police officer. As an ordinary police officer, he would be entitled to the immunity provided to governmental employees under MCL 691.1407(2) if all the statutory

---

[5] The duties of an ordinary police officer can be gleaned from the responsibilities of the police department generally as set forth by the Port Sanilac Village Council:

> Patrol the streets of the Village of Port Sanilac, . . . observe and investigate persons, situations or things which require attention and which affect enforcement of laws or prevention of crime. Preserve the peace and protect life and property, control public gatherings and perform miscellaneous services relative to public health and safety including property checks of private residences (upon request) and commercial establishments. Receive and process complaints by citizens, arrest offenders, prepare reports and testify in court. Traffic duties shall consist of enforcing the traffic ordinances of the Village of Port Sanilac and the State of Michigan. . . . Investigate traffic accidents and prepare proper reports.

[6] We acknowledge that Jaskowski submitted an affidavit in which he averred that he did at times perform those functions that are within the scope of the duties of employees of the police department generally. This fact is not in dispute. However, the fact that Jaskowski performed those functions does not place the functions within the scope of the *executive* duty of the police chief; rather, they remain within the scope of the functional responsibilities of the police department generally.

requirements were satisfied.[7] Indeed, it would lead to an illogical result to limit a plaintiff's intentional-tort claims arising from the conduct of a police officer in those cases in which the police officer was also the police chief who was acting as an ordinary police officer at the time he or she allegedly committed the tortious act.

Affirmed.

RONAYNE KRAUSE, J., concurred with FITZGERALD, J.

MURRAY, P.J. (*dissenting*). The trial court held that defendant Rodney Jaskowski was not entitled to absolute governmental immunity under MCL 691.1407(5) because (1) Jaskowski acted outside the scope of his executive authority as chief of police and (2) Jaskowski was motivated by a "personal vendetta" against plaintiff. Because Michigan law provides no support for such a conclusion under the undisputed material facts presented to the trial court, I respectfully dissent from the majority's decision to affirm the trial court's order denying Jaskowski's motion for summary disposition.

As acknowledged by the majority, MCL 691.1407(5) provides that judges, legislators, "and the elective or highest appointive executive official of all levels of

---

[7] Under MCL 691.1407(2) employees of a governmental unit are immune from state tort claims if all the following conditions are met:

(a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.

(b) The governmental agency is engaged in the exercise or discharge of a governmental function.

(c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage.

government are immune from tort liability for injuries to persons or damages to property if he or she is acting within the scope of his or her judicial, legislative, or executive authority." *Bennett v Detroit Police Chief*, 274 Mich App 307, 311; 732 NW2d 164 (2006). Thus, the test for whether a chief of police is entitled to absolute immunity is whether the official (1) is "the highest appointed or elected executive *of a level of government*," *Grahovac v Munising Twp*, 263 Mich App 589, 596; 689 NW2d 498 (2004), and if he is, (2) whether the chief's acts at issue in this case were within his executive authority, *Payton v Detroit*, 211 Mich App 375, 394; 536 NW2d 233 (1995). As the majority correctly recognizes, Jaskowski, as the Chief of Police for the village of Port Sanilac, is the highest executive official of a level of government. See *Payton*, 211 Mich App at 394 (MCL 691.1407(5) applies to a municipal police chief because he is the highest level official within a political subdivision).[1]

However, the majority errs in its conclusion that Jaskowski acted outside the scope of his authority when he arrested plaintiff. Whether the highest official acted within the scope of his authority depends on the nature of the specific acts alleged, the position held by the official, the laws defining the official's authority, and the structure and allocation of powers in that level of

---

[1] Contrary to plaintiff's arguments, the conclusion that the police department is a level of government emanates from the definitions contained within the governmental tort liability act, MCL 691.1401 *et seq.* A police department is a level of government because a "department" of a municipal corporation is a "political subdivision," MCL 691.1401(b), and a "political subdivision" is a "governmental agency" for purposes of governmental immunity, MCL 691.1401(d). *Mack v Detroit*, 467 Mich 186, 204; 649 NW2d 47 (2002); *Grahovac*, 263 Mich App at 599 (GRIFFIN, J., dissenting). Hence, although it may seem strange from a common-sense perspective to consider a police department a "level of government," the statute and caselaw support this conclusion.

government. *American Transmissions, Inc v Attorney General*, 454 Mich 135, 141; 560 NW2d 50 (1997), quoting *Marrocco v Randlett*, 431 Mich 700, 710-711; 433 NW2d 68 (1988).

Jaskowski submitted an affidavit in which he attested that his executive authority as the chief of police included, amongst many other things, the duty to "arrest offenders." This testimony was based in part on the job description for the chief of police (which was also submitted to the trial court), which sets forth both the "functional responsibilities of the Police Department" as well as the "essential duties and responsibilities" of the position. The majority has quoted the "essential duties" but ignores the "functional responsibilities," which, according to the chief's affidavit, included the general aspects of the job he actually performed while serving as chief. And as noted, Jaskowski testified that some of the tasks he was expected to, and did perform, were to "control public gatherings and perform miscellaneous services relative to public health and safety including . . . [t]o arrest offenders." Importantly, plaintiff failed to submit *any* evidence to contradict Jaskowski's affidavit and documentary evidence, so the material facts about what Jaskowski was expected to do (and actually did) as chief of police were undisputed before the trial court.[2]

Furthermore, the Legislature has given *all* police officers the authority to pursue, arrest, and detain persons suspected of committing a crime. See *Payton*, 211 Mich App at 392, citing MCL 117.34 ("The author-

---

[2] The majority has effectively ignored Jaskowski's affidavit, preferring instead to rely on its own reading of the job description. However, because Jaskowski's affidavit is undisputed and it reveals that his actual duties extended to those matters listed under the "functional responsibilities" of the department, we must accept as true the factual statements of his actual job duties.

ity of the city's police officers to 'pursue, arrest and
detain' those suspected of violating the laws of Michi-
gan is expressly granted."); see also MCL 70.16 (grant-
ing village police officers power to preserve quiet and
good order). Because Jaskowski was the highest execu-
tive official within the police department and the au-
thority granted to that executive position included the
ability to arrest offenders, he acted within the scope of
his executive authority when he arrested plaintiff.[3]

Plaintiff spends a significant amount of time arguing
that Jaskowski was not entitled to absolute immunity
because he was motivated by a "personal vendetta"
against plaintiff and because Jaskowski "was acting
upon his personal biases against individuals who looked
different from him and played music that was unaccept-
able to him." And as noted earlier, the trial court's
decision was in part based on Jaskowski being moti-
vated by this perceived "personal vendetta." However,
whether any of these allegations are true is of no
moment, and any facts pertaining to these allegations
are certainly not material, for they have no bearing on
the legal issue presented. A unanimous Supreme Court
held more than a decade ago that there is no "malevo-
lent heart" exception to absolute immunity, *American
Transmissions*, 454 Mich at 143-144, and we have more
recently held that in light of *American Transmissions*,
whether a defendant acted with "an improper motive

---

[3] While the majority finds that the reasoning of *Scozzari v City of Clare*,
723 F Supp 2d 945 (ED Mich, 2010), "best reflects the legislative intent
expressed in the words of MCL 691.1407(5)," *ante* at 431, *Scozzari* is not
persuasive. *Lee v Nat'l Union Fire Ins Co*, 207 Mich App 323, 328; 523
NW2d 900 (1994). The pivotal basis of the court's holding was that the
defendant *failed to address* whether his authority extended to those also
exercised by a patrol officer. *Scozzari*, 723 F Supp 2d at 967. To the
contrary, Jaskowski *has* provided undisputed evidence of his authority to
arrest, both as a matter of fact and law.

and purpose in" committing the acts at issue was "meaningless," *Armstrong v Ypsilanti Twp*, 248 Mich App 573, 594; 640 NW2d 321 (2001). Consequently, to the extent the trial court's decision rested on a perceived "personal vendetta" against plaintiff, that ruling had no legal support under Michigan law.

Based on the foregoing, Jaskowski was entitled to absolute immunity under MCL 691.1407(5), and I would reverse and remand for entry of an order granting Jaskowski's motion for summary disposition.