AMERICAN TRANSMISSIONS, INC v ATTORNEY GENERAL

Docket No. 175472. Submitted January 16, 1996, at Lansing. Decided March 29, 1996, at 9:15 A.M. Leave to appeal sought.

American Transmissions, Inc., and others brought an action in the Court of Claims against the Attorney General, alleging that the defendant defamed the plaintiffs when interviewed on television about his office's investigation of the plaintiffs' business practices. The court, James R. Giddings, J., granted summary disposition for the defendant, ruling that the defendant was entitled to absolute immunity pursuant to MCL 691.1407(5); MSA 3.996(107)(5). The plaintiffs appealed.

The Court of Appeals *held:*

MCL 691.1407(5); MSA 3.996(107)(5) provides elective executive officials such as the defendant immunity from tort liability for injuries to persons or damage to property whenever they are acting within the scope of their executive authority. In *Gracey v Wayne Co Clerk*, 213 Mich App 412 (1995), the Court of Appeals, relying on *Marrocco v Randlett*, 431 Mich 700 (1988), held that there is an exception to such immunity for the intentional use or misuse of a badge of governmental authority for a purpose not authorized by law.

In this case, the plaintiffs have alleged that the defendant participated in the interview for a purpose not authorized by law, i.e., to disseminate false information about the plaintiffs. The matter must be remanded for a determination by the trial court whether there is a question of material fact concerning whether the defendant acted within the scope of his executive authority.

Remanded.

YOUNG, J., concurring, stated that Administrative Order No. 1994-4 binds the Court of Appeals to follow the directive in *Gracey* to conduct an inquiry into an official's motivation when determining whether the official is entitled to statutory immunity from tort liability. But for the administrative order, Judge Young would hold that *Gracey* was wrongly decided to the extent that the *Gracey* panel believed that *Marrocco* required an inquiry into an official's motivation.

GOVERNMENTAL IMMUNITY — EXECUTIVE OFFICIALS.
  Absolute immunity from tort liability for acts within an elective exec-
  utive official's authority does not extend to intentional use or mis-
  use of a badge of governmental authority for a purpose not author-
  ized by law (MCL 691.1407[5]; MSA 3.996[107][5]).

*Mark Granzotto* and *Neal Bush,* for the plaintiffs.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Thomas R. Wheeker,* Assistant Attorney General, for the defendant.

Before: FITZGERALD, P.J., and SAWYER and YOUNG, JJ.

FITZGERALD, P.J. Plaintiffs appeal as of right the order granting summary disposition to defendant on the ground that defendant was entitled to absolute immunity for the allegedly defamatory statements made about plaintiffs, automobile transmission repair facilities, during a television interview. We remand.

There is no dispute that the Attorney General is authorized to claim absolute immunity under MCL 691.1407(5); MSA 3.996(107)(5), which provides:

> Judges, legislators, and the elective or highest appointive executive officials of all levels of government are immune from tort liability for injuries to persons or damage to property whenever they are acting within the scope of their judicial, legislative, or executive authority.

Plaintiffs contend, however, that defendant was not acting within the scope of his executive authority when he responded to a media request for an interview regarding the investigation of several automobile transmission repair facilities because the investigation had been concluded by the time of the interview. Plaintiffs cite no authority, however, to support their position that defendant's authority to participate in a

media interview relates only to currently pending matters. A party may not leave it to this Court to search for authority to sustain or reject the party's position. *People v Hunter*, 202 Mich App 23, 27; 507 NW2d 768 (1993).

Plaintiffs rely on *Marrocco v Randlett*, 431 Mich 700; 433 NW2d 68 (1988), and *Gracey v Wayne Co Clerk*, 213 Mich App 412; 540 NW2d 710 (1995), to support their argument that defendant was not entitled to absolute immunity because his purpose in participating in the interview was not authorized by law. In *Gracey*, the Court, interpreting *Marrocco*, held that there is an intentional tort exception to governmental immunity for the intentional use or misuse of a badge of governmental authority for a purpose unauthorized by law.[1] *Gracey, supra* at 417. Therefore, assuming that defendant had authority to participate in the interview to address an investigation conducted by his office, he nevertheless did not have authority to participate in the interview for the purpose of disseminating false information regarding plaintiffs. If that was defendant's purpose, as claimed by plaintiffs, he was not acting within the scope of his executive authority, and he is not entitled to immunity for those acts. On remand, therefore, the trial court must determine if there is a question of material fact regarding whether defendant was acting within the scope of his executive authority.

Remanded for further proceedings consistent with this opinion. Jurisdiction is not retained.

---

[1] We concur with the *Gracey* majority's reluctance in applying the intentional tort exception to governmental immunity found in *Marrocco, supra.*

Sawyer, J., concurred.

Young, J. *(concurring)*. I write separately to elaborate on the basis for my disagreement with the holding of *Gracey v Wayne Co Clerk*, 213 Mich App 412; 540 NW2d 710 (1995).

In deciding this appeal, we are obliged to follow the holding of *Gracey* by virtue of Administrative Order No. 1994-4. For the reasons that follow, *but for* our duty to apply *Gracey*, I would hold that the Attorney General enjoyed statutory governmental immunity from liability under MCL 691.1407(5); MSA 3.996(107)(5), because I conclude that he acted clearly within the scope of his "executive authority" in assenting to a televised interview in order to respond to an issue of public concern involving the conduct of his office.[1]

*Gracey* holds that the determination of whether statutory governmental immunity applies in a given case depends upon a two-part inquiry: (1) Does the challenged act fall within the scope of the public official's executive authority—i.e., is the act authorized by our constitution or other law defining the official's authority; and (2) even if the act falls within the authority of the official, did the official act with

---

[1] Plaintiffs are automobile repair facilities. Their amended complaint alleged the following. The Attorney General's office conducted an investigation into transmission repair facilities in 1986. In 1991, a newspaper report disclosed that the Attorney General's investigation had been assisted by an automobile manufacturer whose dealerships competed for repair business with the targeted firms, including plaintiffs. In response to the newspaper articles, the Attorney General appeared on television to defend his office's investigation. Plaintiffs alleged that, by the time of the Attorney General's televised interview, the investigation had been closed, and all administrative and criminal matters had been resolved. During that appearance, it is further alleged that the Attorney General made defamatory statements about the plaintiffs.

improper intent? *Gracey, supra,* 417-418. A majority of the *Gracey* panel recognized that its holding, requiring a factual inquiry into the motivation of a public official, largely eviscerates the concept of governmental immunity as that concept had developed in this state, but "reluctantly" reached its decision because that panel read *Marrocco v Randlett,* 431 Mich 700; 433 NW2d 68 (1988), as requiring this result. I respectfully disagree that *Marrocco* requires or authorizes an analysis of a public official's motivation for acting as a precondition for determining the applicability of statutory immunity.

In *Marrocco,* a case that was not decided on the basis of MCL 691.1407(5); MSA 3.996(107)(5), but on common law governmental immunity doctrine, the mayor of Warren was accused of tortiously interfering with the right of the city attorney to return to his civil service post following his removal from his appointive city position. An ordinance expressly reserved to the attorney in question the right to return to the civil service job. In response to the tortious interference claim, the mayor interposed governmental immunity as a defense. Because of the ordinance, the Court held that the mayor's act of blocking the reinstatement fell outside his authority and was not protected by the doctrine of governmental immunity. *Marrocco, supra,* 710.

The *Marrocco* decision does contain language from a nonbinding opinion in an earlier case signed by only two justices[2] suggesting that improperly motivated actions conducted under the "badge of governmental

---

[2] The dictum referenced is from Justice BRICKLEY's concurring opinion in *Smith v Dep't of Public Health,* 428 Mich 540; 410 NW2d 749 (1987). Justice BRICKLEY was joined in his opinion only by Justice RILEY. The dic-

authority" may nonetheless fall without the protection of governmental immunity. *Id.*, 707-708. However, the precise holding of *Marrocco* in no way depended upon an inquiry into the intent of a public official, but merely focused upon the factors relevant to determining the scope of the official's authority. Significantly, the Supreme Court used the term "hold" in announcing its decision:

> We *hold* that the highest executive officials of local government are not immune from tort liability for acts not within their executive authority. The determination whether particular acts are within their authority depends on a number of factors, including the nature of the specific acts alleged, the position held by the official alleged to have performed the acts, the charter, ordinances, or other local law defining the officials authority, and the structure and allocation of powers in the particular level of government. [*Id.*, 710-711 (emphasis added).]

None of the enumerated factors listed in the holding of *Marrocco* bearing on the question of how a court must determine the scope of a public official's authority even impliedly suggests an inquiry into the official's motivation. Indeed, as aptly noted by the *Gracey* majority, the fact-intensive analysis of motivation required by *Gracey* entirely undermines traditional governmental immunity doctrine, now codified

---

tum itself, while interpreted broadly by *Gracey*, is merely a restatement of the basic proposition that immunized acts must be authorized by law:

> [T]he intentional use or misuse of a badge of governmental authority *for a purpose unauthorized by law* is not the exercise of a governmental function. [*Smith, supra,* 611 (emphasis added).]

The quoted language cannot be read to require an inquiry into the intent of the public official but is only a frank acknowledgment that an ultra vires act cannot be "authorized by law." An "action authorized by law" is the foundation upon which any governmental immunity must rest.

at MCL 691.1407(5); MSA 3.996(107)(5). Had the Supreme Court intended such a sea change in our law, it would have said so unequivocally and included such an analysis within the portion of its opinion it specifically denominated as its holding. Because the Supreme Court did not do so, I believe that *Gracey* was wrongly decided.

Given the language of MCL 691.1407(5); MSA 3.996(107)(5), it is hard to conclude that our Legislature intended that any challenge to official action be transformed into a judicially refereed psychological skirmish.[3] Neither a plain reading of MCL 691.1407(5); MSA 3.996(107)(5) nor the common-law-based *Marrocco* decision warrants such a pernicious result.

---

[3] When the Legislature was considering amendments of the governmental immunity statute in 1985 and 1986, it always provided for immunity for judges, legislators, elective officials, and the highest appointive executive officials when they are acting within the scope of their judicial, legislative, or executive authority. See House Legislative Analysis, HB 5163 Substitute H-2, November 19, 1985; Senate Analysis, HB 5163 (S-3), March 20, 1986; House Legislative Analysis, HB 5163, July 23, 1986. This is in direct contrast to the treatment of lower level governmental employees. With respect to lower level governmental employees, the Legislature considered various intent-based standards, such as "acting in good faith" and "not acting in bad faith." See House Legislative Analysis, HB 5163 Substitute H-2, November 19, 1985; House Legislative Analysis, HB 5163, January 16, 1986. The proposed intent requirements were *in addition* to other prerequisites to immunity in lower level employees; the employee's "reasonable belief" that he was acting within the scope of his authority and the "gross negligence" standard. *Id.* Ultimately, however, the specific intent requirement for lower level governmental employees was omitted from the bill as passed. See MCL 691.1407(2); MSA 3.996(107)(2). Thus, although the Legislature considered various intent-based factors for lower level governmental employees, such an intent factor was never considered or included with respect to high level governmental employees. *Gracey's* discovery of such a standard for high level officials was contrary to the language and legislative purpose of MCL 691.1407(5); MSA 3.996(107)(5).