AMERICAN TRANSMISSIONS, INC v ATTORNEY GENERAL

Docket No. 106104. Decided March 25, 1997. On application by the defendant for leave to appeal, the Supreme Court, in lieu of granting leave, reversed the judgment of the Court of Appeals and reinstated the judgment of the Court of Claims.

American Transmissions, Inc., and other independent transmission shops, brought an action in the Court of Claims against the Attorney General, alleging that the Attorney General defamed them during a 1991 television interview that concerned an earlier fraud investigation conducted by his department. The court, James R. Giddings, J., granted summary disposition for the Attorney General on the ground of immunity from tort liability when acting within the scope of executive authority. The Court of Appeals, FITZGERALD, P.J., and SAWYER, J. (YOUNG, J., concurring), reversed (Docket No. 175472). The Attorney General seeks leave to appeal.

In a unanimous opinion per curiam, the Supreme Court *held*:

Case law and MCL 691.1407(5); MSA 3.996(107)(5) clearly provide that the highest executive officials of all levels of government are absolutely immune from all tort liability whenever they are acting within their executive authority. In this case, the Attorney General is immune from tort liability because he was acting within the scope of his executive authority.

Reversed.

Justice KELLY took no part in the decision of this case.

216 Mich App 119; 548 NW2d 665 (1996) reversed.

*Mark Granzotto* and *Neal Bush* for the plaintiffs-appellees.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Thomas R. Wheeker*, Assistant Attorney General, for the defendant.

PER CURIAM. The plaintiffs sued the Attorney General for defamation, but the circuit court granted summary disposition on the ground that he is immune

from tort liability when acting within the scope of his executive authority. The Court of Appeals reversed. We agree that the Attorney General is immune from this suit, and we therefore reverse the judgment of the Court of Appeals and reinstate the judgment of the Court of Claims.

I

In the mid-1980s, the Attorney General conducted a "sting" operation to determine whether some independent transmission shops were doing unnecessary work.[1] In part, the investigation stemmed from a concern expressed by the General Motors Corporation that shops were taking advantage of a federal consent order that required GM to pay for needed repairs to one of its transmission models.

General Motors played a significant role in the Attorney General's investigation, providing vehicles, transmissions, and office space. However, its involvement evidently was not disclosed, even in 1986 when Attorney General Frank J. Kelley went public with the results of the investigation, and began administrative action to revoke licenses of several transmission shops.[2]

Five years after the sting was announced, the Detroit News ran a two-part series that explained General Motors' involvement and suggested that the automaker may have stood to gain by the investigation.

---

[1] This case has not yet been tried, and the parties are disputing a summary disposition that the Court of Claims entered in favor of the defendant. Thus, the factual allegations of the plaintiffs are taken as true at this stage. The facts do not, however, appear to be in dispute.

[2] The parties are in dispute regarding when and how General Motors' involvement first came to be known.

Mr. Kelley stoutly defended the investigation, and the means by which it was conducted. It is alleged that, in the course of an interview with a television station, he said:

- "GM had never contacted me about the investigation. I had already completed investigation against American Transmissions and found them to be fraudulent."

- "I proved these people—these 13 of them—to be crooks and cheats and operating crooked transmission shops."

- "So what happened, General Motors had, maybe, some problems with some transmissions. So what happened was these crooks were telling everybody that brought a GM car in that yours were one of those faulty transmissions."

- "So General Motors was being victimized by these crooks around the country."

American Transmissions and various of its subsidiary corporate entities demanded a retraction, which Mr. Kelley apparently refused to provide.

In October 1992, the plaintiffs filed a defamation complaint against the Attorney General.[3]

The Attorney General moved for summary disposition on the ground that the plaintiffs had failed to state a claim on which relief could be granted. MCR 2.116(C)(8). After the motion was denied, the Attorney General filed a second motion, alleging that there was no genuine issue as to any material fact, and that

---

[3] The case was initially filed in circuit court, but was later transferred to the Court of Claims.

he was entitled to judgment as a matter of law. MCR 2.116(C)(10). The Court of Claims granted the second motion.

In entering summary disposition in favor of the Attorney General, the Court of Claims relied on this statutory provision:

> Judges, legislators, and the elective or highest appointive executive officials of all levels of government are immune from tort liability for injuries to persons or damages to property whenever they are acting within the scope of their judicial, legislative, or executive authority. [MCL 691.1407(5); MSA 3.996(107)(5).]

The Court of Appeals reversed the summary disposition, and remanded the case so that the Court of Claims could "determine if there is a question of material fact regarding whether defendant was acting within the scope of his executive authority." 216 Mich App 119, 121; 548 NW2d 665 (1996).

The Attorney General has applied for leave to appeal.

## II

In reversing the summary disposition in favor of the Attorney General, the Court of Appeals explained:

> Plaintiffs rely on *Marrocco v Randlett*, 431 Mich 700; 433 NW2d 68 (1988), and *Gracey v Wayne Co Clerk*, 213 Mich App 412; 540 NW2d 710 (1995), to support their argument that defendant was not entitled to absolute immunity because his purpose in participating in the interview was not authorized by law. In *Gracey*, the Court, interpreting *Marrocco*, held that there is an intentional tort exception to governmental immunity for the intentional use or misuse of a badge of governmental authority for a purpose unauthorized by law.[1] *Gracey, supra* at 417. Therefore, assuming that defendant had authority to participate in the interview to

address an investigation conducted by his office, he never-theless did not have authority to participate in the interview for the purpose of disseminating false information regarding plaintiffs. If that was defendant's purpose, as claimed by plaintiffs, he was not acting within the scope of his execu-tive authority, and he is not entitled to immunity for those acts. On remand, therefore, the trial court must determine if there is a question of material fact regarding whether defendant was acting within the scope of his executive authority.

Remanded for further proceedings consistent with this opinion. Jurisdiction is not retained.

[1] We concur with the *Gracey* majority's reluctance in applying the intentional tort exception to governmental immunity found in *Marrocco, supra.*

[216 Mich App 121.]

In a concurring opinion, Judge YOUNG explained, in greater detail, that *Gracey* was wrongly decided—*Marrocco* does not compel an analysis of a public official's motivation. 216 Mich App 122-125.

## III

In *Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567, 592, 633; 363 NW2d 641 (1984), we held that the highest executive officials of all levels of government are absolutely immune from all tort liabil-ity whenever they are acting within their executive authority.[4] That formulation was adopted by the Leg-islature in 1986 when it passed the provision quoted earlier:

Judges, legislators, and the elective or highest appointive executive officials of all levels of government are immune from tort liability for injuries to persons or damages to

[4] We said the same thing of judges and legislators.

property whenever they are acting within the scope of their judicial, legislative, or executive authority. [MCL 691.1407(5); MSA 3.996(107)(5).]

The Legislature's resolve in this regard is indicated by the legislative history[5] and by the absence of amendment since this language was enacted in 1986.

*Marrocco* was a suit against the mayor and treasurer of a home-rule city. In a variety of ways, they were alleged to have harassed an assistant city attorney, causing, inter alia, his discharge from employment and an improper increase in the assessment of his home. Observing an absence of authority inter-

---

[5] When the Legislature was considering amendments of the governmental immunity statute in 1985 and 1986, it always provided for immunity for judges, legislators, elective officials, and the highest appointive executive officials when they are acting within the scope of their judicial, legislative, or executive authority. See House Legislative Analysis, HB 5163 Substitute H-2, November 19, 1985; Senate Analysis, HB 5163 (S-3), March 20, 1986; House Legislative Analysis, HB 5163, July 23, 1986. This is in direct contrast to the treatment of lower level governmental employees. With respect to lower level governmental employees, the Legislature considered various intent-based standards, such as "acting in good faith" and "not acting in bad faith." See House Legislative Analysis, HB 5163 Substitute H-2, November 19, 1985; House Legislative Analysis, HB 5163, January 16, 1986. The proposed intent requirements were in addition to other prerequisites to immunity in lower level employees; the employee's "reasonable belief" that he was acting within the scope of his authority and the "gross negligence" standard. *Id.* Ultimately, however, the specific intent requirement for lower level governmental employees was omitted from the bill as passed. See MCL 691.1407(2); MSA 3.996(107)(2). Thus, although the Legislature considered various intent-based factors for lower level governmental employees, such an intent factor was never considered or included with respect to high level governmental employees. *Gracey*'s discovery of such a standard for high level officials was contrary to the language and legislative purpose of MCL 691.1407(5); MSA 3.996(107)(5). [216 Mich App 125, n 3 (emphasis deleted).]

preting the phrase "within their . . . executive authority,"[6] 431 Mich 707, this Court concluded:

> We hold that the highest executive officials of local government are not immune from tort liability for acts not within their executive authority. The determination whether particular acts are within their authority depends on a number of factors, including the nature of the specific acts alleged, the position held by the official alleged to have performed the acts, the charter, ordinances, or other local law defining the official's authority, and the structure and allocation of powers in the particular level of government. It is not our intention now to rule with specificity concerning the authority of officials under the Warren Code. The trial court is the proper forum for an initial determination. [*Id.* at 710-711.]

Earlier in *Marrocco, supra* at 707-708, this Court took from a 1987 plurality opinion[7] the emphasized portion of this statement:

> We conclude this inquiry by finding that intentional torts are immune if committed within the scope of a governmental function;[8] however, *the intentional use or misuse of a badge of governmental authority for a purpose unauthorized by law is not the exercise of a governmental function.*

In *Gracey*, it was alleged that a county clerk had falsely stated that a lawyer running for judge (against

---

[6] In *Marrocco*, the Court was working with the phrase as presented in *Ross*. As noted earlier, the same formulation also appears in the statute.

[7] *Smith v Dep't of Public Health*, 428 Mich 540, 611; 410 NW2d 749 (1987) (opinion of BRICKLEY, J.), aff'd on other grounds sub nom *Will v Michigan Dep't of State Police*, 491 US 58; 109 S Ct 2304; 105 L Ed 2d 45 (1989).

[8] In *Marrocco*, this Court indicated that the inquiry into whether actions are within a public official's "executive authority" is analogous to the inquiry whether lower level officials are engaged in a "governmental function." 431 Mich 708.

the clerk's neighbor, whom the clerk was supporting in the primary election) had violated the election laws. The clerk had made these charges at a press conference the day before the primary. While enforcement of election laws is clearly within the scope of a clerk's authority, the Court of Appeals found in *Marrocco* a requirement that one look more closely:

> Plaintiffs argue that actions of a county clerk that might normally be considered within the scope of authority of the clerk become acts outside that scope when performed for an ulterior purpose. We agree.
>
> *          *          *
>
> We believe that the Supreme Court in *Marrocco v Randlett*, 431 Mich 700, 713; 433 NW2d 68 (1988), reintroduced concepts that define governmental function by reference to an actor's intent. Consequently, if defendant intentionally conducted a press conference to cause some mischief not authorized by law, then his otherwise appropriate action is not the exercise of a governmental function and is outside the scope of his immunity. [213 Mich App 415-416.]

The *Gracey* panel expressed reluctance with regard to such an improper-purpose exception to the statute's unambiguous grant of immunity, but felt itself constrained by *Marrocco*:

> We believe that it is a mistake to tamper with the clear, broad concept of absolute immunity as expressed in *Ross*. However, we are bound by Supreme Court precedent and reluctantly conclude that *Marrocco* has reintroduced concepts that define executive authority by reference to the actor's intent. Until the Supreme Court gives further direction or clarification, we presume that there is an intentional-tort exception to governmental immunity for the intentional use or misuse of a badge of governmental authority for a purpose unauthorized by law. Therefore, assuming that [the county clerk] had the authority to call a

press conference to address any improprieties that might have occurred during an election, he nevertheless had no authority to conduct a press conference for the purpose of disseminating false information with the intent to sway an election. If that was [the clerk's] purpose, as claimed by plaintiffs, then he was not acting within the scope of his executive authority, and he is not entitled to absolute immunity for those acts. [213 Mich App 417-418.]

In a separate concurrence, Judge MARILYN KELLY disclaimed such reluctance.[9]

IV

We agree with Judge YOUNG that *Gracey* was incorrectly decided. The Legislature's grant of immunity in MCL 691.1407(5); MSA 3.996(107)(5) is written with utter clarity. We need not reach the concern that a malevolent-heart exception might not be workable, since the Legislature has provided no such test.

This Court's *Marrocco* opinion does not explicitly adopt an intent exception to governmental immunity, noting that a variety of factors must be considered to determine whether an official is acting with the scope of "executive authority." 431 Mich 711. This Court did not include "motive" in that roster of considerations,[10] and declined "to rule with specificity concerning the

---

[9]     I agree with the holding of the majority but write separately to express my disagreement with its reluctance in applying the intentional tort exception to governmental immunity found in *Marrocco* [*supra*]. I appreciate that the clear, broad concept of absolute immunity is easier for the courts to apply. But, in balance, a remedy must be available to address an intentional use or misuse of governmental authority for a purpose not authorized by law. For that reason, I believe the *Marrocco* decision was not a mistake, and I apply its holding without reluctance. [213 Mich App 421.]

[10] The factors mentioned in *Marrocco*, 431 Mich 711, were not presented as an exclusive list. However, each factor is a reasonably

authority of officials" in that case. 431 Mich 711. Further, the language taken from the *Smith* plurality, 428 Mich 611, in *Marrocco* at 707-708, adds no such test.

In this case, the Attorney General allegedly defamed the plaintiffs during a 1991 television interview that concerned an earlier fraud investigation conducted by his department. Doubts had been expressed regarding the propriety of the department's conduct, and Mr. Kelley was responding to questions regarding the investigation. On these facts, the Attorney General clearly is "immune from tort liability" because he was "acting within the scope of [his] executive authority." MCL 691.1407(5); MSA 3.996(107)(5).

For these reasons, we reverse the judgment of the Court of Appeals and reinstate the judgment of the Court of Claims. MCR 7.302(F)(1).

MALLETT, C.J., and BRICKLEY, CAVANAGH, BOYLE, RILEY, and WEAVER, JJ., concurred.

KELLY, J., took no part in the decision of this case.

---

"objective" aspect of the overall factual context in which the alleged harm occurs. None involves an inquiry into a person's subjective state of mind.