Cavanagh, J.
(dissenting). In this case, this Court must decide what the Legislature determined to be the appropriate balance between the public interest in ensuring that certain governmental actions are performed with independence and without fear of liability on one hand, and, on the other hand, ensuring that victims of tortious actions are compensated when certain governmental employees commit a tort. Specifically, this Court is asked to decide whether a chief of police, Rodney Jaskowski, who allegedly engaged in tortious conduct against Thomas Petipren while performing the duties of an ordinary police officer is nevertheless entitled to absolute immunity from tort *220 liability under MCL 691.1407(5), simply by virtue of his status as the highest appointive executive official of a level of government.
I believe that the majority errs by concluding that the phrase “executive authority” refers to all authority vested in the elective or highest appointive executive official by virtue of his or her position in the executive branch. In my opinion, the majority’s interpretation erroneously reads the phrase “executive authority” as coextensive with the phrase “executive branch” as used in the Michigan Constitution and, in doing so, not only fails to give meaning to every word in the statute but also effectively grants absolute immunity solely on the basis of an official’s status as a high-level executive, regardless of the nature of the conduct in which the official was engaged. Contrary to the majority position, I would hold that the word “executive” within the phrase “executive authority” refers to a specific subset of authority that a high-level executive must be acting within the scope of to obtain the benefit of absolute immunity from tort liability. Because I believe that the majority’s approach fails to give effect to the Legislature’s intent and extends the scope of the protection of absolute immunity further than the Legislature prescribed, I respectfully dissent.
I. A BRIEF HISTORY OF INDIVIDUAL IMMUNITY FOR PUBLIC EMPLOYEES
Suits for monetary damages generally serve dual purposes: to compensate victims of wrongful actions and to discourage conduct that might result in liability. Forrester v White, 484 US 219, 223; 108 S Ct 538; 98 L Ed 2d 555 (1988). Difficulty arises, however, when public employees are exposed to tort liability. Id. This is because government officials are expected to make *221 decisions that must be “informed by considerations other than the personal interests of the decisionmaker,” yet such decisions will often have adverse effects on others. Id. As a result, although the threat of monetary damages might encourage public officials to lawfully perform their duties in an appropriate manner, the threat of liability might also “inhibit officials in the proper performance of their duties.” Id. Recognition of these issues has led jurisdictions, including Michigan, to adopt various forms of governmental immunity from tort liability. Id.
Michigan’s approach to individual immunity for governmental employees has its historical roots in the common law. Robinson v City of Lansing, 486 Mich 1, 5; 782 NW2d 171 (2010). After this Court partially abolished common-law governmental immunity in 1961, the Legislature responded by enacting the governmental tort liability act (GTLA), MCL 691.1401 et seq., to “restor[e] immunity for municipalities and pre-serv[e] . . . protection for the state and its agencies.” Id. See, also, Ross v Consumers Power Co (On Rehearing), 420 Mich 567, 605; 363 NW2d 641 (1984). The GTLA, however, was silent regarding under what circumstances, and to what extent, officers, agents, and employees could be held responsible for their tortious acts. Ross, 420 Mich at 596, 628. Given the divided, confusing, and often irreconcilable caselaw on the subject, id. at 596, Ross undertook the almost impossible task of attempting to clarify more than a century’s worth of judicial and legislative commentary on governmental immunity, including clarifying the judicial debate regarding liability with respect to individual governmental employees.
With respect to individual liability, Ross explained that previous opinions of this Court had “obfuscated *222 the precise parameters of individual immunity,” noting that in divided decisions the Court had set forth differing approaches to the issue. Ross, 420 Mich at 629-630. In one case, the end result was that employees were immune from tort liability “unless they had been engaged in ultra vires activities.” Id. at 629, citing Bush v Oscoda Area Sch, 405 Mich 716; 275 NW2d 268 (1979). In another case, members of the Court defined the “parameters of individual immunity with reference to whether the tortfeasor was engaged in the exercise or discharge of a governmental function.” Ross, 420 Mich at 631. See, also, id. at 629-630, citing Lockaby v Wayne Co, 406 Mich 65; 276 NW2d 1 (1979). Rejecting the formulations of both approaches, this Court explained that the governmental-function approach blurred the distinction between individual and governmental immunity, Ross, 420 Mich at 629-630, while the ultra vires component of individual immunity, which examined whether the acts were “unauthorized and outside the scope of employment,” also had its “drawbacks,” id. at 631. See, also, Richardson v Jackson Co, 432 Mich 377, 387; 443 NW2d 105 (1989) (defining “ultra vires” activity as an “activity that the governmental agency lacks legal authority to perform in any manner”). This was because the formulation of the ultra vires approach at the time of Ross broadly extended immunity to “every public official, employee, and agent whenever they engage[d] in [any] authorized act[],” which was “not justified by either prior case law or present-day realities.” Ross, 420 Mich at 631.
Persuaded that Michigan’s then existing framework regarding individual immunity was inept and in need of clarification, Ross adopted the approach to individual immunity that it believed best reflected the Legislature’s intent. Id. at 596, 625-626, 635. The adopted approach was similar to that of other jurisdictions, *223 which provided different levels of immunity depending on the function of the officer. Id. at 632-634. Under this framework, “judges, legislators, and the highest executive officials of all levels of government are absolutely immune from all tort liability,” as long as they are acting within their respective “judicial, legislative, or executive authority.” Id. at 633. In contrast, “[l]ower level officials, employees, and agents are immune from tort liability” only if (1) the act was taken during the course of the official’s, employee’s, or agent’s employment and the official, employee, or agent was acting, or reasonably believed he or she was acting, within the scope of his or her authority, (2) the act was done in good faith, and (3) the act was discretionary rather than ministerial in nature. Id. at 633-634. The justification for treating employees differently on the basis of their official functions was explained by Ross as follows:
It is assumed through the broad grant of immunity to certain public employees that these officials and, therefore, their governmental agencies, will not be intimidated nor timid in the discharge of their public duties. Although absolute immunity may be necessary for unfettered governmental decision-making, courts have been reluctant, understandably, to extend its protection beyond select public employees who are delegated policy-making powers.
* * * The policy which only provides a limited immunity to lower level executive officials, unlike the justifications for absolute immunity, reflects a recognition that official immunity should not shield malicious or intentionally unlawful behavior when the actor is not engaged in broad, essential governmental decision-making. Holding these public servants liable does not hamper or intimidate them in the faithful discharge of their duties since they are responding to established administrative guidelines, regulations and informal policy. It is assumed, therefore, that *224 an unreasonable burden does not fall on an administrative system when courts hold lower level executive employees liable for their acts performed in bad faith. [Id. at 632-633, quoting Littlejohn & DeMars, Governmental Immunity After Parker and Perry: The King Can Do Some Wrong, 1982 Det C L Rev, 1, 27-28 (quotation marks omitted).]
Although Ross retained the traditional view that no individual immunity existed for ultra vires acts, Ross, 420 Mich at 631, 634, Ross also made clear that, under its approach, individual immunity was “obvious[ly] . . . far less than that afforded [to] governmental agencies,” which were broadly granted immunity from tort liability whenever the agency engaged in a mandated or authorized activity — i.e., an activity that was not “ultra vires.” Id. at 635 (emphasis added). See, also, id. at 620; MCL 691.1407(1); MCL 691.1401(b).
Shortly after Ross was decided, the Legislature responded by enacting 1986 PA 175, which, among other things, addressed individual immunity for governmental employees. With slight modifications, the Legislature codified Ross’s standard with respect to judges, legislators, and specific executive officials, thus rendering those officials “immune from tort liability” when acting within the scope of their respective authority. MCL 691.1407(5); American Transmissions, Inc v Attorney General, 454 Mich 135, 139-140; 560 NW2d 50 (1997). However, the Legislature altered Ross’s articulation of qualified immunity as it related to the negligent acts of what Ross referred to as “lower level” officials, employees, and agents.[62] Specifically, in ad *225 dressing individual immunity from tort liability for public employees, the Legislature enacted the following framework:
(2) Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency, each volunteer acting on behalf of a governmental agency, and each member of a board, council, commission, or statutorily created task force of a governmental agency is immune from tort liability for an injury to a person or damage to property caused by the officer, employee, or member while in the course of employment or service or caused by the volunteer while acting on behalf of a governmental agency if all of the following are met:
(a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.
Ob) The governmental agency is engaged in the exercise or discharge of a governmental function.
(c) The officer’s, employee’s, member’s, or volunteer’s conduct does not amount to gross negligence that is the proximate cause of the injury or damage.
(3) Subsection (2) does not alter the law of intentional torts as it existed before July 7, 1986.
(5) A judge, a legislator, and the elective or highest appointive executive official of all levels of government are immune from tort liability for injuries to persons or damages to property if he or she is acting within the scope of his or her judicial, legislative, or executive authority. [MCL 691.1407 (emphasis added).]
Accordingly, in both MCL 691.1407(2) and (5), the Legislature indicated that certain governmental offic *226 ers and employees are “immune from tort liability” if specific conditions are met. Under MCL 691.1407(2), an officer or employee must act within the “scope of his or her authority” and meet other conditions, whereas, under MCL 691.1407(5), a judge, legislator, or specific high-level executive official is only entitled immunity from tort liability if the person is “acting within the scope of his or her judicial, legislative, or executive authority.” (Emphasis added.) Because the statute does not define the latter phrase, and no opinion from this Court has expressly considered this issue, this Court must determine the meaning of the phrase that best effectuates the Legislature’s intent.[63] Jennings v Southwood, 446 Mich 125, 136; 521 NW2d 230 (1994).
II. ANALYSIS
A. THE MAJORITY’S INTERPRETATION OF MCL 691.1407(5)
As previously noted, I cannot join the majority’s analysis, which, in my opinion, fails to give effect to every word in the statute, and broadens the scope of absolute immunity beyond the intent of the Legislature.[64] Under MCL 691.1407(5), a “judge, a legislator, and the elective or highest appointive executive official of all levels of government are immune from tort *227 liability for injuries to persons or damages to property if he or she is acting within the scope of his or her judicial, legislative, or executive authority.” (Emphasis added.) Thus, certain high-level executive officials are entitled to immunity from tort liability if the executive official acts within the scope of his or her executive authority.
The majority’s analysis, however, begins by removing the phrase “scope of his or her ... authority” from its context. Specifically, rather than considering whether the statutory references to “judicial,” “legislative,” and “executive” modify the phrase “authority” — in order to describe a specific and limited subset of each public official’s authority that the official must act “within the scope of” to be entitled to immunity — the majority focuses on the phrases “judicial,” “legislative,” and “executive” to read them as a mere reference to the axiomatic power divide among the three branches of government. However, the language chosen by the Legislature did not expressly grant immunity from tort liability for actions taken by the highest executive official by virtue of his or her position in the executive branch. Instead, the Legislature granted immunity from tort liability for those actions that fall “within the scope of” an executive official’s “executive authority.” As a result, the majority’s interpretation transforms the statutory reference to “executive authority” into a reference to the “executive branch of government.” In my opinion, this is erroneous.
In reading the phrase “executive authority” as coextensive with the phrase “executive branch” as it is used in the Constitution, the majority’s analysis results in a reading of the statute that is contrary to the well- *228 established maxim that this Court presumes that every word in a statute should be given meaning. In re MCI Telecom Complaint, 460 Mich 396, 414; 596 NW2d 164 (1999). See, also, Robinson, 486 Mich at 17-18. Specifically, by holding that the reference to “legislative,” “judicial,” and “executive” merely parallels the statute’s earlier reference to who is entitled to assert immunity, the majority interprets the statute as granting an official immunity from tort liability for all actions “within his or her authority.” Thus, the majority’s interpretation renders the statutory references to “judicial,” legislative,” and “executive” within the phrase “judicial, legislative, or executive authority” mere reiterations, which, “by definition, creates surplus language.” Odom v Wayne Co, 482 Mich 459, 471; 760 NW2d 217 (2008).[65] See, also, In re MCI, 460 Mich at 414 (“[A] court should avoid a construction that would render any part of the statute surplusage or nugatory.”). Had the Legislature actually intended to grant judges, legislators, and specified high-level executives absolute immunity from tort liability for all actions “within the scope of his or her authority” generally, the Legislature could have easily and clearly stated that, as it did in other provisions of the GTLA. See, e.g., MCL 691.1407(2) (providing that officers and employees are immune from tort liability if, among other things, the officer or employee is “acting within the scope of his or her authority”).
*229 Although this Court has not previously defined the phrase “executive authority,” and thus has not expressly determined whether the phrase “executive authority” is limited to a subset of a high-level official’s authority or encompasses all authority vested in the official, this Court has explained that executive officials are not absolutely immune from tort liability for those acts that do not fall within the scope of the elective or highest appointive executive official’s “executive authority.” American Transmissions, 454 Mich at 140-141, citing Marrocco v Raudlett, 431 Mich 700, 710-711; 433 NW2d 68 (1988). This Court has also provided lower courts with a nonexhaustive list of objective factors to consider in determining whether an act falls within the scope of the executive official’s executive authority. American Transmissions, 454 Mich at 141, 143 n 10, citing Marrocco, 431 Mich at 711.[66] The majority’s broad interpretation of the phrase “executive authority,” however, effectively discards the nonexhaus- *230 tive list of factors in favor of one inquiry: whether the official was authorized to perform the act — whether by statute or otherwise, including “authorization” under a job description or an affidavit provided by the executive. By granting immunity for any authorized act, the majority’s analysis returns Michigan’s approach to immunity, at least as it pertains to high-level executives, to a formulation akin to the ultra vires approach that was rejected by Ross, 420 Mich at 631, 633, and, subsequently, by the Legislature when it adopted statutory language that limits absolute immunity to only those actions that fall within the scope of a high-level executive official’s executive authority and, thus, refused to extend absolute immunity to such officials whenever they engage in any authorized act. See In re MCI, 460 Mich at 415 (“Where the Legislature has considered certain language and rejected it in favor of other language, the resulting statutory language should not be held to explicitly authorize what the Legislature explicitly rejected.”).
B. AN ALTERNATIVE APPROACH TO MCL 691.1407(5)
In my opinion, the statutory language supports the notion that the Legislature did not, as the majority opines, intend to afford absolute immunity for all actions within a judge, legislator, or high-level executive’s authority, generally. Instead, by modifying the word “authority” with the words “judicial, legislative, or executive” the Legislature only intended to grant absolute immunity from tort liability for harm resulting from activities that are truly executive, judicial, or legislative in nature. See Merriam-Webster’s Collegiate Dictionary, Tenth Edition (1999) (defining “judicial,” in part, as “of or relating to a judgment, the function of judging, the administration of justice, or the judiciary”; *231 defining “legislative,” in part, as “having the power or performing the function of legislating”; and defining “executive,” in part, as “having administrative or managerial responsibility”); Ross, 420 Mich at 632-633 (explaining that the justification for affording absolute immunity to certain officials is to protect unfettered decision-making by those “engaged in broad, essential governmental decision-making”) (citation and quotation marks omitted). Thus, in accordance with the notion that this Court presumes that every word within a statute has some meaning, People v McGraw, 484 Mich 120, 126; 771 NW2d 655 (2009), I believe that the Legislature, in codifying Ross ’ s grant of absolute immunity for those officials acting within their respective judicial, legislative, and executive authorities, intended to describe a specific and limited subset of a judge’s, legislator’s, or high-level executive’s authority that those officials must be “acting within the scope of” to obtain the benefit of immunity from tort liability. See Ross, 420 Mich at 632, citing Littlejohn & DeMars, 1982 Det C L Rev at 25-27.[67] In my view, broadly interpreting the phrase “executive authority” as encompassing all authority vested in a high-level executive extends abso *232 lute immunity beyond its purpose — to protect unfettered governmental decision-making afforded to those with policy-making powers. Ross, 420 Mich at 632-633, quoting Littlejohn & DeMars, 1982 Det C L Rev at 27-28. See, also, Frankenmuth Mut Ins Co v Marlette Homes, Inc, 456 Mich 511, 515; 573 NW2d 611 (1998) (explaining that the primary goal of this Court is to give effect to the Legislature’s intent through reasonable construction of the statutory language “in consideration of the purpose of the statute and the object sought to be accomplished”) (citation and quotation marks omitted).
Additionally, reading the statutory provision as a whole supports a narrower interpretation of the phrase “executive authority” than that adopted by the majority. See Robinson, 486 Mich at 15 (explaining that it is well established that statutes must be read together and, thus, no single section should be viewed in isolation).[68] When MCL 691.1407(5) is read in conjunction with MCL 691.1407(2), it is clear that the Legislature did not intend to insulate high-level executive officials from tort liability whenever they act within the scope of any aspect of their authority simply because they are cloaked with the title of “executive.” Instead, when the highest appointive executive official commits a tort *233 while not acting within the scope of his or her “executive authority” under MCL 691.1407(5), the language of the respective statutes and the statutory scheme supports the notion that the official is not entitled to absolute immunity but might nevertheless be entitled to qualified immunity under MCL 691.1407(2) or, alternatively, the requirements delineated in Ross concerning intentional torts.[69]
Specifically, MCL 691.1407(2) provides that, except as otherwise provided in MCL 691.1407, each “officer” and “employee” of a governmental agency[70] is immune from tort liability for injury to person or property caused by the officer or employee while in the course of employment if the officer or employee was, among other things, “acting within the scope of his or her authority.” (Emphasis added.) Thus, unlike MCL 691.1407(5), which qualifies the type of authority that the high-level executive must be acting within the scope of to be entitled to absolute immunity, MCL 691.1407(2) does not limit its application to a specific subset of an employee or officer’s authority but, instead, refers to the general authority of governmental officers and employees. Further, MCL 691.1407(2) broadly refers to “officers” and “employees” in discussing the qualified immunity available under that subsection. It does not, in contrast to the Ross test, refer to “lower level” officers and employees only. Thus, the subsection was likely devised to apply not only to lower-level officers and employees, but to high-level officials in certain circumstances as well. And, although MCL 691.1407(2) does not expressly refer to “executive officials,” an *234 “executive official” is nevertheless an “employee” or “officer” of a governmental agency. See Merriam-Webster’s Collegiate Dictionary, Tenth Edition (1999) (defining “officer” as an “AGENT” or “one who holds an office of trust, authority, or command,” and defining “official” as “one who holds or is invested with an office : OFFICER”). Accordingly, the plain language of the statute as well as the statutory scheme supports the notion that an executive’s title should not act to elevate any authorized act that is performed by a high-level executive into an act that is within the scope of his or her “executive authority” for purposes of absolute immunity. Instead, when a high-level executive is not acting within the scope of his or her executive authority, that executive should not be entitled to the “strong medicine” that is absolute immunity. Forrester, 484 US at 230 (citation and quotation marks omitted). Rather, as an employee or officer of a governmental agency, the high-level executive acting outside the scope of his or her executive authority is still entitled to seek the protections afforded by qualified immunity under MCL 691.1407(2) or Ross and, consequently, there is no unreasonable burden on the administration of government.
C. APPLICATION
As applied to this case, I disagree with the majority that Jaskowski was entitled to absolute immunity under MCL 691.1407(5). Specifically, when a chief of police engages in conduct performed by an ordinary police officer, such as conducting an arrest, I would hold that the chief of police is not entitled to absolute immunity simply because, as a police officer, the chief also has the authority to arrest. In carrying out the decision to arrest, Jaskowski was simply not acting within the *235 scope of his executive authority as a highest appointive executive official.[71] Instead, he was acting within his authority as an ordinary police officer.
Applying the factors articulated by a majority of this Court to assist courts in determining whether an act falls within the scope of a high-level executive’s executive authority, see American Transmissions, 454 Mich at 141, it is clear that Jaskowski, as the chief of police and, consequently, a police officer, indisputably had the authority to conduct an arrest. Nevertheless, Jaskows-ki’s conduct in this case involved the quintessential conduct of an ordinary police officer, rather than the “executive authority” of the highest-ranking official of a level of government, especially when considering the structure and allocation of powers within the police department itself as demonstrated by the essential duties and responsibilities of defendant as the chief of police. See Petipren v Jaskowski, 294 Mich App 419, 427-429, 432 n 5; 812 NW2d 17 (2011).[72] Accordingly, Jaskowski should only be entitled to seek qualified *236 immunity as provided to officers and employees under MCL 691.1407(2) and Ross.
III. CONCLUSION
Because I believe that the phrase “executive authority” as used in MCL 691.1407(5) does not “encompassD all authority vested in the highest appointive executive official of a level of government by virtue of his or her role in the executive branch,” ante at 28 (emphasis added), but, instead, refers to a subset of authority within which the highest appointive executive official must act “within the scope of” to be entitled to absolute immunity, I respectfully dissent.
Markman J., concurred with Cavanagh.
McCormack and Viviano, JJ., took no part in the decision of this case.

 See Odom v Wayne Co, 482 Mich 459, 471; 760 NW2d 217 (2008), wherein a majority of this Court held that the Legislature retained Ross’s standard with respect to intentional torts, but, in enacting MCL 691.1407(2) and (3), modified Ross’s standard with respect to negligent acts. Thus, under the majority opinion in Odom, Ross’s standard applies *225 to alleged intentional torts, whereas the standard articulated in MCL 691.1407(2) applies to alleged negligence.

 The majority asserts that this dissent adopts a view that is not recognized in Michigan law and implicitly accuses this dissent of citing no caselaw in support of its position. The majority’s assertions, however, are rather curious, given that even the majority acknowledges that no decision of this Court has specifically addressed the issue presented in this case. Indeed, I question whether this Court would have granted leave to appeal if binding, on-point authority existed.

 Although this Court has yet to expressly address whether a chief of police is an “elective or highest appointive executive official of all levels of government” for purposes of immunity from tort liability under MCL 691.1407(5), as noted by the majority, Petipren has effectively abandoned his previous argument that Jaskowski does not fall under this category. *227 See People v Bean, 457 Mich 677, 685 n 13; 580 NW2d 390 (1998). As a result, I will assume that this standard was met for purposes of this appeal.

 Indeed, had the Legislature intended the majority’s interpretation— i.e., that the Legislature was merely referring to the axiomatic power divide between the three branches of government and, thus, the phrase “executive authority” encompasses all authority vested in the executive by virtue of his or her position within the executive branch — there would have been no need for the statute to refer to a public official’s “judicial, legislative, or executive authority” because, as the majority notes, the Constitution expressly provides that “[n]o person exercising powers of one branch shall exercise powers properly belonging to another branch” of government. Const 1963, art 3, § 2.

 Those factors include
the nature of the specific acts alleged, the position held by the official alleged to have performed the acts, the charter, ordinances, or other local law defining the official’s authority, and the structure and allocation of powers in the particular level of government. [American Transmissions, 454 Mich at 141 (citation and quotation marks omitted).]
Although American Transmissions, 454 Mich at 141 n 8, noted that a majority of this Court had previously opined that the inquiry into whether actions are within a public official’s executive authority is analogous to the question whether lower-level officials or governmental agencies are engaged in governmental functions, as previously noted, Ross asserted that the immunity granted to individuals is “far less” than that afforded to governmental agencies, Ross, 420 Mich at 635. Further, Ross rejected “defining] the parameters of individual immunity with reference to whether the tortfeasor was engaged in the exercise or discharge of a governmental function” because that approach “blurr[ed] two separate inquires.” Id. at 630-631.

 Although I would only consider the scope of the immunity as applied to the facts of the present case, see Marrocco, 431 Mich at 712 (Boyle, J., concurring), notably, the Littlejohn & DeMars article cited in Ross explained that, at the common law, “judges were always protected by absolute immunily for their judicial acts,” even when maliciously performed, and, likewise, legislators were shielded from tort liabilily when they acted “in the sphere of legitimate legislative activily” Littlejohn & DeMars, 1982 Det C L Rev at 26 (citation and quotation marks omitted) (emphasis added). Given Ross’s reliance on that authority, I question the majority’s holding that the statutoiy reference to judicial, legislative, and executive authority was simply a legislative intent to inquire whether judges, legislators, and high-level executive officials exercised any authority vested in them by virtue of their positions within their respective branches of government, rather than defining a specific subset of each official’s respective authority that is entitled to absolute immunity.

 The majority faults my dissent for reading the statutory provisions as a whole, and accuses me of adding requirements into the statutory language and somehow failing to give effect to each word within the statute. My response is simple: the majority’s claims, as with the bulk of the majority’s responses to this dissent, hinge entirely on accepting the majority’s premise that the word “executive” as used within the phrase “executive authority” is a mere reiteration that simply parallels the statute’s earlier reference to who is entitled to assert immunity. And, respectfully, a faithful reading of this dissent illustrates that it does not add words to the statutory language as the majority claims, but simply gives effect and meaning to each word within the statute — including the word “executive” within the phrase “executive authority.”

 See note 1 of this opinion.

 See MCL 691.1401(a), (e), and (g) (defining “governmental agency” to include the “state and its agencies, departments, commissions, courts, hoards, councils, and statutorily created task forces”).

 It is notable that had a lower-ranked police officer committed the same acts as Jaskowski, that officer would be entitled to seek, at most, the more limited, qualified immunity available under MCL 691.1407(2) or Ross, 420 Mich at 633-634. Thus, the majority effectively grants him absolute immunity simply because he is cloaked with the title of a high-level executive. The majority asserts that this comment “plainly oversimplifies” its holding. However, as this example illustrates, this comment is a fair response in light of the consequences of the majority’s holding, which include, under the facts of this case, granting immunity to Jaskowski because he simply happens to have been the chief of police, rather than an ordinary patrol officer.

 Jaskowski’s job description, discussed by the majority, is divided into separate sections, including one titled “FUNCTIONAL RESPONSIBILITIES OF THE POLICE DEPARTMENT,” and one titled “ESSENTIAL DUTIES AND RESPONSIBILITIES” of the “Chief of Police.” (Emphasis altered.) The duty to conduct arrests is noticeably absent from the latter section.