*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ERIC JONES, FLEMING YATOOMA & BOROWICZ, PC, and COEUS, LLC,

UNPUBLISHED
June 17, 2021

Plaintiffs-Appellants/Cross-Appellees,

v

No. 350997
Oakland Circuit Court
LC No. 2019-174189-CZ

CITY OF WALLED LAKE,

Defendant-Appellee,

and

L. DENNIS WHITT,

Defendant-Appellee/Cross-Appellant.

Before: REDFORD, P.J., and BORRELLO and TUKEL, JJ.

PER CURIAM.

In this action seeking damages for alleged defamatory statements made by defendant L. Dennis Whitt on three separate occasions, plaintiffs, Eric Jones, Fleming Yatooma & Borowicz, PC, and COEUS, LLC, appeal as of right the trial court's order granting summary disposition in favor of defendants. Defendant Whitt cross-appeals the same order. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

This appeal arises out of alleged defamatory statements made by Walled Lake's city manager, L. Dennis Whitt, (Whitt) in three instances. The comments pertained to plaintiff COEUS's attempt to obtain a medical marijuana provisioning center license within the city of Walled Lake and the city's failure to approve that request. In November 2018, COEUS filed a lawsuit against the city and some of its officials, including Whitt. The crux of that complaint was that the city acted unfairly in how it approved medical marijuana provisioning licenses for other entities, but not COEUS. A news article in a local paper, *Spinal Column*, explained:

The original suit, filed in November [2018] by COEUS, LLC, gives a long list of complaints, stating there is "undeniable evidence" that the city granted at least one Medical Marijuana Facilities Licensing Act (MMFLA) provisioning center license and "belief" that all three were granted before enacting the licensing ordinance.

In addition to Millen/The Greenhouse of Walled Lake, defendants for the first lawsuit include the City of Walled Lake, City Manager L. Dennis Whitt, Mayor Linda Ackley, City Development Coordinator Chelsea Pesta (who also is the assistant city manager), City Clerk Jennifer A. Stuart, "John and Jane Does 1 - through 20," all city employees, Custom Built Properties, LLC d/b/a The Greenhouse of Walled Lake, and Millen were named in the lawsuit.

It also cites conspiracy between Millen/The Greenhouse of Walled Lake and the city, in particular singling out Whitt. The lawsuit stated that Millen's buildout of his facility was completed and ready to be opened in September 2017, "nearly five months before" the city made amendments to the zoning ordinance, and was already hiring. It further asserted that around the same time, Millen was representing The Greenhouse of Walled Lake as having already received a city license and only being delayed by the state. According to the lawsuit, "Defendants colluded and conspired to deprive deserving MMFLA applicants, such as plaintiff, of their fundamental rights to fairness, justice, equal protection and due process, through a series of backroom dealing by which defendants circumvented, and frankly ignored, the licensing ordinance and administrative rules applicable thereto."

At a February 19, 2019 city council meeting, Whitt provided his city manager's report. The minutes from that meeting state, in pertinent part, that while discussing the marijuana licensing update,

> Mr. Whitt opined the lawsuit is all bogus. Mr. Whitt said the City Council does not have authority to issue a marijuana license, the State of Michigan has that authority. Mr. Whitt said the council does not have the authority to make him issue a business license. Mr. Whitt said he was recently interviewed by the Oakland Press and was asked about the *cartel* that is out to get him. [Emphasis added.]

Although the minutes do not reflect an actual quote from Whitt, he admitted at a deposition in the 2018 COEUS lawsuit that he used the term "cartel" to refer to COEUS at the council meeting.

After the council meeting, Whitt was interviewed by Anne Seebaldt, a *Spinal Column* reporter. Seebaldt had asked Whitt what he meant by "cartel." Although Whitt's entire response to Seebaldt is not quoted in her article, she wrote:

> Whitt said he believes that the intent of these suits on the part of this "cartel" was to have a "chilling effect" upon issuing licenses to anyone else, and specifically targeted The Greenhouse of Walled Lake. The lawsuit was filed before Millen had received his state marijuana license.

-2-

"What you have," he said, "is a group that wants a license and figures the fastest way to get it is to bully those who issue them into giving them one, while bypassing other applicants. They sued the city making false allegations."

Plaintiffs' second amended complaint in the instant case lists four counts: one count of defamation against Whitt, two counts of gross negligence against the city of Walled Lake related to its retention and supervision of Whitt, and one count of injunctive relief to prevent any further defamatory statements.

Defendants thereafter moved for summary disposition under MCR 2.116(C)(6), (7), and (8). Defendants argued that Walled Lake was immune from tort liability because, assuming it was implicated in plaintiffs' count of defamation,[1] a governmental agency cannot be held vicariously liable for the intentional torts of its appointed officials. Defendants also argued that the city was immune from the gross-negligence counts because the "gross negligence" exception to governmental immunity applies to individuals, not the governmental agency itself. Regarding Whitt, defendants averred that, as the highest appointive executive official in the city, he was absolutely immune from tort liability. They also maintained that Whitt was acting within the scope of his executive authority when he made his comments to the council, to the reporter, and at the deposition. Alternatively, defendants argued that Whitt's statements were absolutely privileged.[2]

In response, plaintiffs asserted that the gravamen of the complaint was that the city was indirectly liable under the doctrine of respondeat superior for the intentional torts of Whitt and, directly, for the grossly negligent retention of him. Plaintiffs also argued that Whitt's statements did not involve a governmental function, so he was not entitled to immunity. Further, plaintiffs argued that Whitt was not immune because he is not the highest appointive *executive* official; instead, as a city manager, he was an administrator who lacked any executive function. Likewise, plaintiffs also argued that because Whitt was not acting within his administrative authority, his statements were not privileged. Plaintiffs also argued that Whitt's comments in his deposition testimony were not germane to the proceedings, so they were not privileged.

The trial court denied defendants' motion for summary disposition under MCR 2.116(C)(6) and (8), but granted the motion under MCR 2.116(C)(7). The trial court ruled that the city was absolutely immune from liability. And although the trial court ruled that Whitt was not immune from liability, it nonetheless held that his comments were protected or privileged.

II. ANALYSIS

This Court reviews a trial court's decision on a motion for summary disposition de novo. *Odom v Wayne Co*, 482 Mich 459, 466; 760 NW2d 217 (2008). A party is entitled to summary disposition under MCR 2.116(C)(7) if, among other things, the plaintiff's claims are "barred because of immunity granted by law." A moving party may support its motion for summary

---

[1] Defendants noted that there were no substantive allegations against the city in that count.

[2] Defendants also put forth arguments related to MCR 2.116(C)(6) and (8), but the trial court's denial of the motion on those grounds is not pertinent to the issues on appeal.

disposition under this subrule with affidavits, depositions, admissions, or other documentary evidence. MCR 2.116(G)(5). "The contents of the complaint are accepted as true unless contradicted by the evidence provided." *Odom*, 482 Mich at 466 (quotation marks and citation omitted). This Court also reviews de novo statutory interpretation, including construction and interpretation of a city charter or ordinance, as a question of law. *Oakland Co Bd of Co Rd Commr's v Mich Prop & Cas Guaranty Ass'n*, 456 Mich 590, 610; 575 NW2d 751 (1998); *Ferguson v City of Lincoln Park*, 264 Mich App 93, 95; 694 NW2d 61 (2004).

Plaintiffs argue that the trial court erred by granting summary disposition in favor of the city of Walled Lake on the basis of governmental immunity. As explained in *Genesee Co Drain Comm'r v Genesee Co*, 309 Mich App 317, 326-327; 869 NW2d 635 (2015):

> The Legislature enacted the GTLA [governmental tort liability act] in 1964 after a series of court decisions began to erode the common-law rule of governmental immunity from tort liability. The GTLA restores governmental immunity in two ways. First, it abolishes common-law exceptions to governmental immunity from tort law. Second, the GTLA mandates that, "[e]xcept as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function." MCL 691.1407(1).

At the outset, plaintiffs assert that their complaint included a count of respondeat superior liability against the city.[3] Plaintiffs concede that there is no express allegation, but nonetheless aver that the complaint shows that this allegation is present. "It is well established under Michigan jurisprudence that a court is not bound by the label a party assigns to its claims. Rather, we must consider the gravamen of the suit based on a reading of the complaint as a whole." *Stephens v Worden Ins Agency, LLC*, 307 Mich App 220, 228-229; 859 NW2d 723 (2014) (quotation marks and citation omitted).

The only allegations pertaining to the city are in relation to its retention and supervision of Whitt. Therefore, the gravamen of plaintiffs' complaint does *not* include an allegation that the city of Walled Lake should be held liable for any defamatory statements made by Whitt on the basis of respondeat superior. Moreover, assuming such a claim was properly alleged, it cannot be sustained because "governmental employers may not be held liable for the intentional tortious acts of their employees." *Mays v Governor*, 323 Mich App 1, 68; 916 NW2d 227 (2018), aff'd 506 Mich 157 (2020); see also *Hamad v Wayne Co*, 490 Mich 1, 29 n 74; 803 NW2d 237 (2011) (noting that a claim against a governmental agency on the basis that it was vicariously liable in tort for an employee's intentional tort is barred by the GTLA).

Thus, the only claims remaining against the city were plaintiffs' claims involving the grossly negligent retention and supervision of Whitt. These claims are barred by the GTLA because the retention and supervision of City Manager Whitt clearly is a governmental function.

---

[3] The trial court never ruled on whether it thought that the complaint encompassed a claim for respondeat superior liability.

Under the GTLA, "a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function." MCL 691.1407(1). And none of the enumerated exceptions to governmental immunity applies.[4]

Plaintiffs rely on the gross-negligence exception in the GTLA, however, that exception only applies to individual governmental agency employees. In addition to granting immunity to governmental agencies if they are engaged in the exercise or discharge of a governmental function, the act also grants immunity to officers and governmental agency employees if other conditions are met. Specifically, MCL 691.1407(2) provides, in pertinent part:

> [*E*]*ach officer and employee* of a governmental agency, *each volunteer* acting on behalf of a governmental agency, and *each member of a board, council, commission, or statutorily created task force* of a governmental agency is immune from tort liability for an injury to a person or damage to property caused by the officer, employee, or member while in the course of employment or service or caused by the volunteer while acting on behalf of a governmental agency if all the following are met:
>
> (a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.
>
> (b) The governmental agency is engaged in the exercise or discharge of a governmental function.
>
> (c) The officer's, employee's, member's, or volunteer's conduct does not amount to *gross negligence* that is the proximate cause of the injury or damage. [Emphasis added.]

With their claims of gross negligence, plaintiffs clearly were attempting to implicate this exception to governmental immunity. However, as the statute provides, this exception only applies to *individuals*; it does not apply to the *governmental agency* itself. *Gracey v Wayne Co Clerk*, 213 Mich App 412, 420; 540 NW2d 710 (1995), abrogated on other grounds in *American Transmissions, Inc v Attorney General*, 454 Mich 135; 560 NW2d 50 (1997); see also *Tarlea v Crabtree*, 263 Mich App 80, 89; 687 NW2d 333 (2004) ("Generally, governmental *employees* acting within the scope of their authority are immune from tort liability except in cases in which their actions constitute gross negligence.") (emphasis added).

Plaintiffs attempt to save their claims against Walled Lake by arguing that cities are not some nebulous entities, but are instead run by individuals, which in this case are the individual members of the city council. While we concur with plaintiffs' broad statement, the individual

---

[4] "The six statutory exceptions are: the highway exception, MCL 619.1402; the motor-vehicle exception, MCL 691.1405; the public-building exception, MCL 691.1406; the proprietary-function exception, MCL 691.1413; the governmental-hospital exception, MCL 691.1407(4); and the sewage-disposal-system-event exception, MCL 691.1417(2) and (3)." *Wesche v Mecosta Co Rd Comm*, 480 Mich 75, 84 n 10; 746 NW2d 847 (2008).

council members are not parties to this lawsuit. The two named defendants in this suit are Whitt and the City of Walled Lake. The pertinent defendant for this issue is the city. And because whether any *person* was grossly negligent has no bearing on whether *the city* is immune from suit, the trial court properly dismissed the claims against the city under MCR 2.116(C)(7).

Defendant Whitt argues on cross-appeal that the trial court erred by ruling that he was not absolutely immune from tort liability.

The GTLA provides certain high-ranking governmental officials with absolute immunity from tort liability. MCL 691.1407(5) provides:

> A judge, a legislator, and the elective or highest appointive executive official of all levels of government are immune from tort liability for injuries to persons or damages to property if he or she is acting within the scope of his or her judicial, legislative, or executive authority.

Thus, "[t]o qualify for absolute immunity from tort liability[,] an individual governmental employee must prove his or her entitlement to immunity by establishing, consistently with the statute's plain language, (1) that he or she is a judge, legislator, or the elective or highest appointive executive official of a level of government and (2) that he or she acted within the scope of his or her judicial, legislative, or executive authority." *Petipren v Jaskowski*, 494 Mich 190, 204; 833 NW2d 247 (2013). Because there is no dispute that Whitt was not a judge or legislator, the first question that must be answered is whether he was "the elective or highest appointive executive official" for the city of Walled Lake.

The trial court adopted plaintiffs' arguments as to why Whitt did not qualify for absolute immunity. Plaintiffs' primary position was that Whitt only possessed *administrative* authority and had no *executive* power, which meant that he could not be an "executive official." In support, plaintiffs noted that, by ordinance, "the city manager shall be the chief *administrative* officer of the city government." Walled Lake Ordinances, § 2-43 (emphasis added). The duties of the city manager are prescribed in the city's ordinance as follows:

> (1) Be responsible to the council for the efficient administration of all administrative departments of the city government.
>
> (2) *See that all laws and ordinances are enforced*.
>
> (3) Appoint, with the consent of the council, the heads of the several city departments whose appointments are not otherwise specified in the city Charter or ordinance, and to discharge the department heads without the consent of the council, and to direct and supervise the department heads.
>
> (4) Give to the proper department or officials ample notice of the expiration or termination of any franchises, contracts or agreements.
>
> (5) See that all terms and conditions imposed in favor of the city or its inhabitants in any public utility franchise, or in any contract, are faithfully kept and performed.

(6) Recommend an annual budget to the council and to administer the budget as finally adopted under policies formulated by the council, and to keep the council fully advised at all times as to the financial condition and needs of the city.

(7) Recommend to the council for adoption such measures as may be deemed necessary or expedient, and to attend council meetings with the right to take part in discussions but not to vote.

(8) Exercise and perform all administrative functions of the city that are not imposed by the city Charter or ordinance upon some other official.

(9) Perform such other duties as may be prescribed by the city Charter or as may be required by ordinance or by direction of the council. [Walled Lake Ordinances, § 2-43 (emphasis added).]

The fact that this ordinance omits the use of the term "executive" and uses the term "administrative" is not dispositive. Indeed, the type of administration Whitt performs clearly is "executive administration." See *Black's Law Dictionary* (11th ed) (defining "executive administration" as "[c]ollectively, high public officials who administer chief departments of the government"). Further, "executive branch" is defined as "[t]he division of government charged with *administering* and *carrying out the law*." *Id.* (emphasis added). As plaintiffs have admitted, Whitt is the chief administrative officer of the city, but his duties also include "[s]ee[ing] that all laws and ordinances are enforced." Walled Lake Ordinances, § 2-43(2). Also, "[a]n executive should have broad-based jurisdiction or extensive authority similar to that of a judge or a legislator." *Chivas v Koehler*, 182 Mich App 467, 471; 453 NW2d 264 (1990). Thus, it is evident that Whitt possesses executive authority, as that term is commonly understood.[5]

Plaintiffs also maintain that the mayor pro-tem is the highest appointive person in the city government, not Whitt. This position is not supported by the plain reading of the relevant portions of the city charter, which provide:

At each municipal election, the new Councilman from among those incumbents who ran for re-election at the most recent election, *who has received the highest number of votes* in that election, and who shall have served a tenure of two (2) years shall be Mayor Pro-tem, unless such Councilman shall in writing notify the clerk of their declination to so serve before such *appointment* becomes effective, in which event, the Councilman who has received the second highest number of votes in that election shall become Mayor Pro-tem, provided that person has served as a Councilman for at least two (2) years. [Walled Lake Charter, § 4.4.]

---

[5] The Michigan Supreme Court also has recognized that a city manager is an "executive," stating: "Under the city manager form of government, popular among smaller cities, the executive, the city manager, serves at the will of the legislature, the city commission." *Rental Prop Owners Ass'n of Kent Co v City of Grand Rapids*, 455 Mich 246, 267; 566 NW2d 514 (1997).

Although the charter uses the word "appointment" once in describing the position, there is nothing appointive about the position. The position of mayor pro-tem is not decided by any governmental official or body. Instead, the mayor pro-tem is determined by which incumbent council member receives the *highest number of votes from the general election*. There is nothing "appointive" about such a scheme. As such, regardless of how the charter may view this as an "appointive" position, it is not one as contemplated by the GTLA.[6]

Plaintiffs also suggest that the mayor is the highest executive in the city, which precludes Whitt, as the city manager, from invoking immunity under the GTLA. We disagree. Again, the GTLA states, "A judge, a legislator, and the elective or highest appointive executive official of all levels of government are immune from tort liability . . . ." MCL 691.1407(5). Plaintiffs read the GTLA as only providing immunity to the highest executive official, regardless of whether that person is elected or appointed. But that interpretation would require applying the adjective "highest" to "elective . . . executive official" when, by its placement, the Legislature clearly intended it to only modify "appointive executive official." See *Sun Valley Foods Co v Ward*, 460 Mich 230, 237; 596 NW2d 119 (1999) (stating that the interpretation of a critical word or phrase in a statute involves consideration of both the placement and purpose of the phrase in the statutory scheme as well as its grammatical context). Thus, under the plain terms of the statute, immunity is available to one who is an elective executive official or the highest appointive executive official. Whitt, as the city manager, is the highest appointive executive official in the city.

We acknowledge that the use of the word "or" in a statute can sometimes create confusion. "The terms 'and' and 'or' are often misused in drafting statutes, and inappropriate use of these words has infected statutory enactments. However, the literal meaning of 'or' should be followed unless it renders the statute dubious." *Beauregard-Bezou v Pierce*, 194 Mich App 388, 393; 487 NW2d 792 (1992) (citations omitted). This Court has recognized "or" as being defined as "[a] disjunctive particle used to express an alternative or to give a choice of one among two or more things." *Id.*, citing *Black's Law Dictionary* (6th ed). Initially, there is no indication that the Legislature misused the term "or" in MCL 691.1407(5). That is because using the word "and" could have created the senseless conclusion that immunity would only be granted to an executive official who is *both* elected *and* the highest appointed official. Nonetheless, "or" expressing an "alternative" or offering "a choice of one among two or more things" in this context is somewhat meaningless because the statute, on its face, provides no guidance on how to make such a choice between the alternatives. Hence, the statute should be interpreted as the "or" representing the two different ways a person could gain executive immunity—the person could be elected or be the

---

[6] Because the GTLA differentiates between elected officials and appointed officials, the mayor pro-tem would fall under the former category. Furthermore, assuming the mayor pro-tem was an appointed official under the GTLA, it is doubtful that they would be considered an executive official. The mayor pro-tem has no concrete duties except "[i]n case of absence or disability of the Mayor, the Mayor Pro-tem shall perform the duties of the Mayor during the period of absence or disability." Walled Lake Charter, § 4.4. With no administrative or executive duties, it would be nonsensical to have the mayor pro-tem be considered an executive official, let alone one that is "higher" than the city manager, who is responsible for the administration of the entire city. Walled Lake Ordinances, § 2-43.

highest appointive executive official.  As a result, the GTLA affords immunity to (1) a person who is a judge, (2) a person who is a legislator, and (3) a person who is either the elective or the highest appointive executive official at any level of government.  Accordingly, because Whitt, as the city manager, is the "highest appointive executive official" in the city, he is entitled to immunity under the GTLA.

But any immunity for Whitt would exist only with respect to actions performed "within the scope of his . . . executive authority." MCL 691.1407(5).  Thus, we must consider whether Whitt's statements at the city council meeting, to a reporter after the meeting, and during a deposition were actions within the scope of his executive authority.

> The determination whether particular acts are within [officials'] authority depends on a number of factors, including the nature of the specific acts alleged, the position held by the official alleged to have performed the acts, the charter, ordinances, or other local law defining the official's authority, and the structure and allocation of powers in the particular level of government. [*Marrocco v Randlett*, 431 Mich 700, 711; 433 NW2d 68 (1988).]

Whitt's duties as city manager included attending city council meetings with the right, if not the obligation to take part in discussions, Walled Lake Ordinances, § 2-43(7), and performing other duties as required by the direction of the city council, Walled Lake Ordinances, § 2-43(9). Consequently, Whitt taking part in "discussions" in council meetings, especially in the context of providing his city manager's report, is an official duty.  The minutes from the city council meeting indicate that the council had asked Whitt to supply an update on, among other things, the "marijuana facilities" issue.  Therefore, when Whitt made his statements at the city council meeting, in the course of providing his report, he clearly was acting within the scope of his authority as city manager.  As a result, Whitt is immune from tort liability for any comments he made at the city council meeting.

Likewise, when Whitt spoke to a reporter after the meeting about his comments, that action was within the scope of his authority as well.  In *American Transmissions*, 454 Mich at 137, 144, our Supreme Court held that the Attorney General, who had called the plaintiffs "crooks and cheats" in a television interview, was absolutely immune from tort liability because he was acting within the scope of his executive authority during the interview.  The Court explained that "[d]oubts had been expressed regarding the propriety of the department's conduct, and [the Attorney General] was responding to questions regarding the investigation." *Id*. at 144.  Similarly, in the present case, Whitt, as the city manager, was being questioned by a reporter after the council meeting regarding statements he had made during the meeting.  As in *American Transmissions*, such conduct was implicitly within the scope of Whitt's executive authority.  Therefore, Whitt is absolutely immune from tort liability for any comments made to the *Spinal Column* reporter.[7]

---

[7] Although the trial court dismissed all counts against Whitt, the court relied on the doctrine of privilege in doing so.  It is questionable whether Whitt's comments to the reporter were privileged. See *Kefgen v Davidson*, 241 Mich App 611, 618; 617 NW2d 351 (2000) ("The absolute privilege

The last statement at issue was made during Whitt's deposition. We conclude that Whitt's statements at the deposition were made within the scope of his authority, which grants absolute immunity. Notably, Whitt was sued in that prior suit in his official capacity. The caption of the case in which the deposition occurred listed Whitt as "CITY MANAGER L. DENNIS WHITT." Because he was sued in his official capacity, it follows that his participation in those proceedings was within the scope of his official authority. Thus, the trial court erred when it failed to grant defendants' motion for summary disposition for this specific claim on the basis of absolute immunity.[8]

Next, plaintiffs argue that the trial court erred by granting summary disposition before the close of discovery.

Summary disposition is not premature when further discovery does not stand a fair chance of uncovering factual support for the opposing party's position. *Village of Dimondale v Grable*, 240 Mich App 553, 566; 618 NW2d 23 (2000). In response to defendants' motion for summary disposition, plaintiffs asserted that the motion raised "key factual questions" that were to be resolved though discovery. Specifically, plaintiffs identified the following factual questions:

> 1) as to the doctrine of immunity, even though the City's own Ordinance identifies Whitt as the chief administrative officer and, in a related matter, the Mayor Pro Tem testified that the Mayor is the executive head of the City and Whitt has no executive power, what is his claimed "executive" function? 2) as to the privilege argument, in what context did Whitt make defamatory statements to the Spinal Column newspaper? 3) in the City Council meeting, were the statements Whitt made part of executive or legislative operations of the Council, or was Whitt defending himself by labeling Plaintiffs a "cartel."

Our review of the relevant law applied to the record in this matter leads us to conclude that further discovery did not have a fair chance of shedding any meaningful light on any of the proffered questions. As previously discussed, whether Whitt, as the city manager, was entitled to absolute immunity is a question of law. His duties (and those of the mayor and mayor pro-tem) are clearly spelled out in the city's ordinances and charter. Thus, further discovery would not have aided in making this legal determination. Regarding plaintiffs' question 2, there is not a fair chance that any further discovery would have altered the analysis. This question pertains to privilege, and we have concluded that Whitt was absolutely immune from suit. Moreover, the context of Whitt's comments is fairly evident: he was approached by a reporter sometime after the city council meeting and was asked about the comments he had made at that meeting. And we have already

---

has generally been applied to communications made during legislative and judicial proceedings . . . ."). Regardless, even presuming that any of Whitt's comments were not privileged, summary disposition nonetheless was proper on the basis of absolute immunity. As this Court has previously stated, we will affirm a trial court ruling "where the right result issued, albeit for the wrong reasons." *Gleason v Dep't of Transp*, 256 Mich App 1, 3; 662 NW2d 822 (2003).

[8] Our disposition of this issue makes it unnecessary to consider defendant's additional argument that the claims are bared by the common-law witness immunity doctrine.

answered question 3. Whitt's statements were made in the course of providing his update to the city council. Notably, to the extent that plaintiffs seek to dive into Whitt's intent at the city council meeting, such an investigation is irrelevant. "Absolute privilege" applies without regard to the intent of the speaker. See *American Transmissions*, 454 Mich at 143-144. As long as the person was "acting within the scope of [his] executive authority," the person is immune from tort liability. *Id.* Therefore, there is not a fair chance that discovery would have shed any meaningful light on this "factual question."

Because discovery in this instance did not stand a fair chance of uncovering factual support to undermine the pertinent legal conclusions, the trial court did not err by ruling on defendants' motion for summary disposition before the close of discovery.

Accordingly, we conclude that the trial court did not err by granting summary disposition in favor of the city on governmental immunity grounds. However, the court erred when it failed to grant summary disposition in favor of Whitt on immunity grounds. But because the trial court reached the correct result, i.e., granting summary disposition to Whitt, we will affirm even if it used incorrect or different reasoning. See *Gleason v Dep't of Transp*, 256 Mich App 1, 3; 662 NW2d 822 (2003).

Affirmed. Defendants having prevailed in full may tax costs. MCR 7.219.

/s/ James Robert Redford
/s/ Stephen L. Borrello
/s/ Jonathan Tukel

-11-